## PFEIFFER BREWING CO. v. BOWLES, Price Adm'r.

### No. 171.

United States Emergency Court of Appeals.

Heard at Detroit Jan. 4, 1945.

Decided Jan. 26, 1945.

Writ of Certiorari Denied April 2, 1945.
See 65 S.Ct. 914.

E. C. Shields, of Lansing, Mich. (Merlin Wiley and Charles A. Meyer, both of Detroit, Mich., on the brief), for complainant.

John O. Honnold, Jr., and Henry S. Sellin, both of Washington, D. C. (Richard H. Field, Gen. Counsel, and Nathaniel L. Nathanson, Associate Gen. Counsel, O.P.A., both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

LINDLEY, Judge.

Price Regulation No. 259, as amended by Amendment No. 1 (7 F.R. 9621), fixed two basic methods for determining a brewer's maximum price for sales of beer to wholesalers in 32-oz. containers: (1) his sales price in such containers in the base period (plus certain specified increases), or (2), if he had not previously sold the particular item, his sales price for beer in 12-oz. containers, during the base period plus 122 per cent thereof (and plus the provided increases). Complainant, on July 10, 1942, filed its application for adjustment of its ceiling price for beer sold in such containers as provided by Section 1499.18(b) of the General Maximum Price Regulations, claiming that it had not regularly previously sold in them. That provision directs the Price Administration to adjust any wholesale maximum price if such price, (1) causes the applicant substantial hardship; (2) is abnormally low as related to the maximum prices established for competitive sellers of the same commodities, and (3) establishing for applicant price bearing a normal relation to that established for competitive sellers will not threaten to cause an increase in the level of retail prices.

Complainant averred that at its then existing price, its profit per case of 32-oz. bottles was only 11 cents whereas per case of 12-oz. bottles it was 25 cents; that, because its sales in the larger bottles, which had formerly constituted only 15 per cent of its sales had increased to 75 per cent, to enforce the then existing ceiling would subject it to substantial hardship. Thereupon the Administrator entered Order No.

52, under Section 1499.18(b) of the General Maximum Price Regulations increasing complainant's maximum prices for sales in the larger bottles to $1.90 for retailers and to $1.65 for wholesalers but reserved the right to revoke or amend the order. Shortly thereafter beer was placed under Maximum Price Regulation No. 259 issued November 2, 1942 (7 F.R. 8950) which perpetuated the freeze technique of the General Maximum Price Regulations based upon prices charged in the base periods, October, 1941, and March, 1942. This regulation as amended (7 F.R. 9621), as noted, provided the two methods for determining ceiling prices of beer in the larger containers.

Somewhat later the Administrator re-examined complainant's application. He determined that certain of the averments were not in accord with the facts. He found that complainant's use of the larger container had not been an innovation or had existed for only a year or so preceding June, 1942, but that it had been complainant's practice since early 1936; that certain competing brewers had been shipping into Detroit and selling beer in similar containers and that complainant was, therefore, not the only one dealing in the same; that complainant's sales in such containers had not risen to 75 per cent of its sales but only to approximately 32 per cent; that complainant's records reflecting its profits for 1942 as compared with those for 1941 disclosed that it was not suffering any substantial hardship. Accordingly he held that complainant's price for beer in the larger bottles during the base period had not been abnormally low and that it did not cause substantial hardship. He revoked the price that had been granted and directed complainant to establish its ceilings on the basis of the prices at which it had sold beer in quart bottles during the base periods.

On August 4, 1944, complainant protested, claiming discrimination between it and other brewers in Detroit. The protest was denied September 29, 1944, and complainant filed its complaint on October 9, of the same year.

The record discloses that as a result of the classification made by the Administrator, complainant's price is from 12 to 23 cents lower per case than that for certain other manufacturers in Detroit who had not previously sold in the larger containers. Upon this disparity claimant bases its case and our question is whether, under the particular facts involved, that disparity grew out of what would at first blush appear to be discrimination or is the result of reasonable classification on the part of the Administrator.

The ultimate effect of the regulation was to create two classes of brewers, one including all those who had not previously sold in the larger containers and the other, those who had. For the first, the Administrator fixed the ceiling price by what is admitted to be a fair formula, namely, 122 per cent of the price previously charged for beer in the smaller containers. For the second, the ceiling was fixed at the price for which the brewer had previously sold beer in the larger container. Thus our specific question is whether such classification is reasonable or arbitrary, amounting to unreasonable discrimination. A corollary question is whether, when the two classifications are governed by the two rules and enforcement of the regulation results in complainant being compelled to sell its beer in the larger containers at a price substantially below that of its neighboring competitors, it can be said, as a matter of law, to result in arbitrary discrimination.

■ Equal protection of the law is the constitutional right of every American citizen. Indeed, it has frequently been said to be essential to due process of law guaranteed by the constitution. Amendment 5. In other words, legislation must be general in character upon the subjects to which it is related and enforceable in the usual modes adapted to the facts in the case. Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623. Class legislation discriminating against some and favoring others is prohibitive. But the rule does not prohibit or prevent classification which is reasonable, for, while the law must affect alike all persons in the same class and under similar conditions, classification based upon substantial distinction, with a proper relation to the objects classified and the purposes sought to be achieved, if it does operate alike on all members of the class, is not special, discriminatory or class legislation. Obviously, classifications must embrace all who belong in the same category and may not be capricious or arbitrary. But if the statute is uniform in the obligation of all members of a legitimate class, to which it is made applicable, no one can complain of denial of equal protection of the laws. This we think is hornbook law.

The Administrator, confronted with the task of fixing ceilings upon the price of beer and recognizing the desirability of providing for its sale in larger containers than had generally been used, in order to save metal used in capping bottles, entered upon a study of the problem as it affected the industry. Finding that many brewers had not used larger containers, he concluded that a reasonable price for new vendors of beer so bottled in case lots should be 122 per cent of that for case lots in the smaller ordinary containers. The parties are agreed that this was a reasonable formula. He further found, however, that some brewers had previously utilized the larger containers at long established prices and, just as he had fixed the price of beer in the ordinary containers at the prices charged during the base period, he applied a like rule with regard to beer in the larger containers for brewers who had regularly dealt in the same. The effect was to place a ceiling upon complainant's beer in the larger containers at considerably less than 122 per cent of the price for beer in the smaller containers, resulting in a substantial difference between its ceiling on beer in larger containers and that of other brewers near who had not previously sold in such containers. Other brewers, however, selling in the same territory, who had used the larger containers, were treated likewise.

It seems to us that when the Administrator put in one class all those who had previously dealt in the larger bottles and fixed their prices in accord with his standard on other sizes, namely, at prices for which the beer had sold during the base period, his classification was reasonable and fair. It applied equally to all persons within the same category, namely, those who had dealt in larger bottles and voluntarily fixed their own prices.

True, complainant urges that though it had sold beer in larger containers for a period of almost six years prior to fixing of the ceiling, such sales had been introductory and experimental in an endeavor to promote sales amongst its customers. Unfortunately the record does not support this contention. There is substantial evidence to support the Administrator's finding that complainant had for over five years consistently sold beer in the larger containers at prices fixed by itself and that during the same period certain of its competitors had done the same thing. All are in the same category; all are a member of the same class, who, not then having their prices fixed by law, thus established for themselves by themselves on a free and open market certain historical prices.

The ceilings established by Regulation No. 259 perpetuated the status and the relationship which had been developed by the members of the industry in the open market. The Administrator's authority thus to freeze prices established in an industry is no longer open to question. United States Gypsum v. Brown, Em.App., 1943, 137 F.2d 803; Northwood Apartments v. Brown, Em.App., 1943, 137 F.2d 809; Chatlos v. Brown, Em.App., 1943, 136 F.2d 490. If this resulted in compelling a seller who during the base period had a lower price than his competitor to continue to adhere to that price this worked no discrimination, for one in this status finds himself there because he has voluntarily placed himself there. To compel him to adhere to the position established by himself is reasonably consistent with the treatment accorded the entire industry.

Judgment will enter dismissing the complaint.