## HAWAII BREWING CORPORATION, Limited, v. BOWLES, Price Administrator.

### No. 178.

United States Emergency Court of Appeals.

Heard at Houston Jan. 29, 1945.

Filed April 25, 1945.

Robert P. Smith, of Washington, D. C. (William Ristig, John W. Iliff, and Ella C. Thomas, all of Washington, D. C., on the brief), for complainant.

Jacob D. Hyman, Chief, Court Review Price Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and John O. Honnold, Jr., Sp. Asst. to Associate Gen. Counsel, all of Washington, D. C., Henry S. Sellin, of New York City, John Van Sickle, of Buffalo, N. Y., and Lewis Leeds, of New York City, Attys., Office of Price Administration, on the brief), for respondent.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

LINDLEY, Judge.

Complainant, engaged in production and sale of malt beverages in Hawaii, protested Maximum Price Regulation No. 373, as amended, issued by the Territorial Director of the Office of Price Administration on March 30, 1944, and Regulation No. 373, Amendment No. 61, promulgated by the Administrator on June 16, 1944 (9 F.R. 6810). The protest, filed May 29, 1944, was denied September 28, 1944.

Complainant and the American Brewing Company, for some years prior to the war, had been and still are the only manufacturing brewers in the Hawaiian Islands, the two selling respectively "Primo" and "Royal" in quantities constituting about one-third of the beer distributed there, the other two-thirds being brought in from the United States and distributed by eight mainland brewers, four of whom have sup-

plied the major portion of the imported article. Complainant has sold about two-thirds of the beer produced locally, its Hawaiian competitor distributing the remaining one-third.

Following invocation of martial law, on December 7, 1941, sale of beer was suspended in Hawaii until February 4, 1942, when the Military Governor authorized resumption at prices not exceeding those prevailing December 6, 1941, which were identical with those prevailing in the period October 1 to October 15, 1941. The Price Control Section of the Office of the Governor, on June 27, 1942, issued Regulation No. 5, establishing as a price per case of locally produced beer, $2.15, and for mainland beers from $2.40 to $3.50 per case, depending upon the particular brand, all which prices were those in effect prior to December 7, 1941.

On November 2, 1942, the Office of Price Administration issued MPR 259 (7 F.R. 8950), "applicable to the forty-eight states * * * the territories and possessions of the United States," fixing the price of beer at the then existing ceilings, plus either seven or ten cents, depending upon which of two optional tables was used, to reimburse distributors for the new additional federal excise tax, effective November 1, 1942, and increased cost of manufacture. On the same day, the Governor, as respondent contends, permitted, by amendment to Regulation No. 5, the addition of eight cents per case to the price of Hawaiian manufactured beer, to cover the same federal excise tax and cost increases. Eight days later, on November 10, 1942, the Governor issued MPR 25, providing that all regulations, amendments thereto and orders thereunder promulgated by the Office of Price Administration, which did not expressly exempt Hawaii, should be enforced in the territory, unless expressly declared inapplicable. Beer was not included in the specified list of commodities termed inapplicable. Complainant contends that by this action the Governor effectually adopted MPR 259 and that it was governed thereafter thereby.

On March 10, 1943, martial law having been partially abrogated, price control was returned to civil authorities. On that day the Office of Price Administration issued General Order No. 49, adopting all regulations, amendments thereto and orders of the Military Governor in Hawaii and continuing them in effect.

On March 28, 1944, in order to afford the industry relief from the increased burden imposed by the Revenue Act effective April 1, 1944, 26 U.S.C.A.Int.Rev. Code, § 1650, the Administrator issued Amendment No. 4 to MPR 259 (9 F.R. 339) permitting increases in the ceiling price of beer sufficient to compensate the brewer for the additional tax imposed. This amendment also was made applicable to the states, the District of Columbia, and the territories and possessions of the United States. Following this master regulation, the Territorial Director, on March 30, 1944, in an amendment to MPR 373, froze the maximum price of complainant's beer at that which had been previously fixed, required complainant to absorb the additional tax and authorized the competing mainland brewers selling beer in Hawaii to add to their previously established maximum prices there the additional tax and certain established costs. On June 16, 1944, this amendment to the Regulation was approved by the Price Administrator in Amendment No. 61 to MPR 373 (9 F.R. 6810). It is the differentiation reflected by these two regulations of which complainant complains.

Despite a sharp controversy between the parties, we think it unnecessary to determine which specific regulations were controlling during the various stages of price regulation in the Islands, for our essential question is whether the Administrator's eventual regulation perpetuating the differentiation complained of is valid.

█ The propriety of the application of the freeze date technique in fixing maximum prices by roll-back and freezing of prices of commodities, or rentals in defense rental areas, as of a date prior to emanation of any abnormal factors resulting or threatening to result in price increases inconsistent with the purposes of the Act, is demonstrated in Chatlos v. Brown, Em.App., 136 F.2d 490; Northwood Apartments, Inc., v. Brown, Em.App., 137 F.2d 809; Hillcrest Terrace Corporation v. Brown, Em.App., 137 F.2d 663, concerning rents; and Philadelphia Coke Co. v. Bowles, Em.App., 139 F.2d 349, and Consolidated Water Power & Paper Co. v. Bowles, Em.App., 146 F.2d 492, having to do with commodities. Obviously the method is equally fit and suitable for beer

and, apparently, in the present case, the Administrator originally thought it properly applicable to all brewers distributing the liquor in Hawaii, for, first, the military and then the civil authorities of Hawaii fixed the price for beer in the Islands for all distributors, including the local brewers and those importing from the mainland, upon the price freeze technique, establishing as maximum prices those prevailing on December 6, 1941. These in turn were the same as those existing from October 1 to October 15, 1941, the suggested basic period for the entire United States and its possessions. These prices continued until the increase permitted by the Administrator for the entire industry, to cover the additional excise tax imposed by Congress in 1942 and certain additional costs of production. The same general pattern was followed by the Hawaiian civil authorities for both Island brewers and importers. Thus the addition allowed the local brewers was, for the new excise tax, 7 cents per case and, for increased cost of production, 1 cent per case.

This price freeze technique, thus preserved by the additions spoken of, continued in force as to all vendors in Hawaii until the Territorial Director issued his Regulation No. 373, later approved by the Office of Price Administration. Then for the first time, a distinction was made between the local brewers and the mainland importers. The Territorial Director adhered to the price freeze technique as to the mainland brewers importing beer, allowing them an additional increase to cover the latest excise tax imposed by the Revenue Act effective in 1944. He declared, however, that he believed the proper technique for the local producers was that of a dollar and cents price; that he had examined the financial structures and the records of the two territorial companies and learned that they were realizing an adequate profit, and that they would, therefore, be excluded from any allowance for the excise tax due under the new Revenue Act.

Consequently, thereafter, of the ten brewers selling beer in Hawaii, the eight who imported from the mainland were still governed by the price of December 6, 1941, plus the allowance made the industry in general for increased cost of production and the two excise taxes, whereas complainant's maximum price was fixed on a dollar and cent pattern at such a figure as to exclude the tax due under the 1944 Revenue Act. Stated, otherwise, by Regulation 373 approving the action of the local director, the Administrator, instead of retaining the pattern of freezing complainant's net sales price as of December 6, 1941, effectually reduced it by the amount of the new tax imposed, while he retained for the importers their prices as of December 6, 1941. Thereafter complainant's competitors, whose prices had been competitively established in the open market, were permitted to realize from their sales just what they had realized before December 6, 1941, while complainant was not permitted to realize the old return but forced to adhere to its former price, less the new tax. Prior to April 1, 1944, all dealers' prices were measured by the same yardstick; after that date they were measured by unequal standards. The prices originally fixed by the same standard were observed throughout 1943. If anything transpired in that period to alter the existing relative situations of complainant and its competitors, it does not appear in the record. The price authorities obviously believed the regulation generally fair and equitable before April 1, 1944, yet, so far as we are advised, nothing occurred to change the situation on that date or thereafter. The Director found increase in sales of the local producers but failed to determine whether the same situation existed as to the eight importers. He found increased amount of profits due to increase in volume of sales on the part of the Island brewers but failed to determine whether the same situation had resulted in the case of the eight importers.

During the years covered by the record statistics the capacity of complainant's plant and its invested capital had increased. Furthermore the military authorities had sought to increase production locally in order to conserve shipping space from the mainland to the Islands and thus promote the war effort. On October 1, 1941, the selling price for Primo was $2.15. Of the competing products, Acme was selling at $2.15 per case and Lucky Lager at $2.25. On June 27, 1942, Primo remained at $2.15; Lucky Lager had advanced to $2.45 and Acme to $2.40 per case. On November 2, 1942, after the addition of the excise tax under the Act of 1942, § 601 et seq., 26 U.S.C.A.Int.Rev.Acts, Primo

sold for $2.23 per case, Acme for $2.48 and Lucky Lager for $2.53. After the imposition of the additional tax` by the Revenue Act of 1944, Primo, refused any allowance on account of such tax, continued to sell at $2.23, Acme at $2.57 and Lucky Lager at $2.94. Complainant's net profit after tax for 1941 was 10.10%; for 1942, 10.5%; 1943, 8.8%. Its profits for 1944, for the first four months, were running about the same as or a trifle more than those for 1943. Complainant's cost per case of raw material in 1941 was 15 cents plus, 1942, 16 cents plus, 1943, 19 cents plus, 1944, 22 cents plus. The percentage of return upon the invested capital of complainant was, in 1937, 20%; 1938, 27%; 1939, 12%; 1940, 18%; 1941, 11%; 1942, 18%; 1943, 19%. What that of any of the eight competing importers is is not shown. Mainland beer consistently sells for from 30 to 40 cents a case higher. This is largely due to the freight on imported beer which is approximately 33 cents a case. The local brewers import raw materials from the mainland and their competitors the finished article. What the freight on raw material may be is not disclosed.

Beyond these facts in the record we find nothing to advise us that the comparable prices, established in open competition before December 6, 1941, and frozen as of that date were not generally fair and equitable, and nothing to show that a comparison of facts arising later disclosed any change thereafter; nothing to show that it was necessary, in order to carry forward the intent of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., to create a subclassification of the two local brewers.

■ Classification in legislation and regulation which is reasonable and affects alike all persons in the same class and under similar conditions does not come within the prohibition of action discriminating against some and favoring others. But it must be based upon substantial distinction with proper relation to the objects classified and the purposes sought to be achieved. It must operate alike on other members of the class and must embrace all who belong in the same category. Whether a classification is reasonable depends entirely upon the facts upon which it is based. In Pfeiffer Brewing Company v. Bowles, Em.App., 146 F.2d 1006, we

found reasonable basis in fact for the classification complained of. Here the record does not reflect reasonable basis in fact for the subclassification made. There lies the distinction between valid subclassification in the one case and invalid subclassification in the other.

■ We agree, as the Administrator urges, that he has discretionary power to shape maximum prices with due reference to any and all special factors or elements in the economy existing in the community or locality under consideration. The Administrator found circumstances existing in Hawaii, including isolation from the mainland and certain local industrial and economic conditions which had brought into being an economy for the territory different from that generally existing on the mainland. This he had the clear right to do. But that does not solve our problem; rather the question is whether, when considering that local economy, he could include in one class of factors therein the local manufacturers and fix their prices by one yardstick and include in another their local importing competitors and fix their prices by different standards, without a showing of facts justifying such variant classifications. We have no doubt that he might, after a full comparison of the financial structures and records of all the brewers competing in Hawaii, have determined whether there were conditions there that might justify differentiation as to territorial distributors. But the weakness of his position lies in the fact that he made no such comparison, that in one instance he examined the financial structures and operating histories and acted upon them while as to the remaining eight competing distributors, who supply more than two-thirds of the beer sold in Hawaii, he made no such investigation or examination. He made differentiation not between the separate economy of the Islands and that of the mainland, but between two competing agencies in the local economy. The real basis for his announced distinction lay, not in the unique economy abiding in Hawaii but rather in the increase in sales and resulting profits of two of the ten participants in that economy, accompanied by complete absence of consideration of the same elements on the part of the eight other participants. The net price of the latter, selling two-thirds of the beer, was maintained; that of the

former, selling one-third, was decreased, all without determination of whether the respective situations were comparable or different. In other words, he made differentiation without gathering facts justifying it.

Surely prices may vary on the same commodity in various localities throughout the United States and its possessions. Flett v. Bowles, Em.App., 142 F.2d 559, 564. But this does not mean that different pricing standards may be applied to members of the same industry in the same locality without a showing of facts justifying the differentiation. It is essential to fair treatment that all persons who are similarly situated be dealt with upon an equal basis; that no greater burdens be laid upon one than are laid upon others in the same calling and condition. Consolidated Water Power and Paper Co. v. Bowles, 146 F.2d 492 (E.C.A.1944); Pfeiffer Brewing Co. v. Bowles, 146 F.2d 1006 (E.C.A.1945). We applied this test in Consolidated Water Power and Paper Co. v. Bowles, supra, and Flett v. Bowles, supra, finding price regulations invalid because they subjected the complainants to competitive handicaps not characteristic of the industry prior to price control. We see no reason for deviating from that reasoning.

A judgment will be entered setting aside Section 25(a) (5) of Maximum Price Regulation No. 373, as amended by Amendment No. 61.