## BOOTH FISHERIES CORPORATION v. BOWLES, Price Administrator.
### No. 266.

United States Emergency Court of Appeals.
Heard at Chicago January 17, 1946.
Decided Feb. 13, 1946.

Frank Greenberg, of Chicago, Ill. (Halbert O. Crews and Levinson, Becker & Peebles, all of Chicago, Ill., on the brief), for the complainant.

Carl H. Fulda, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and Reuben Goodman, and Edward F. O'Connor, all of Washington, D. C., Attorneys, Office of Price Administration, on the brief), for the respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

MARIS, Chief Judge.

The complaint now before us seeks to set aside Maximum Price Regulation 579, insofar as it discriminates against the complainant in its business as a wholesaler of fish both frozen and fresh.

The complainant has been engaged in the fish business for more than fifty years and the methods employed by it in the sale and distribution of fish have continued without material change throughout that time. It produces fish and also purchases fish from other producers. It processes and accumulates fish in quantity at various points throughout the United States. From these points it distributes fish to its various branch organizations which function as wholesalers. This is done upon orders submitted by the branches. In addition the complainant sells to other wholesalers not associated with it. The branch organizations acting as wholesalers sell the fish to local consumers, retailers and other local wholesalers. They are, however, not separate legal entities although they do function in a semi-independent manner under branch managers, each of whom is responsible for the operations of his branch and has the right to and does in many cases purchase fish from sources other than the

complainant. It has been the consistent practice of the complainant to make a charge over and above its cost price against each branch to which it ships fish, which charge is predicated upon the service rendered in the accumulation of the fish, their preservation and in their shipment in odd-lot quantities. This charge is the same for sales made to its own branches as to independent wholesalers and is comparable to the charge made by other coastal wholesalers selling to inland wholesalers.

It is thus apparent that the complainant functions as a producer and processor of fish when it obtains, processes and ships fish from its coastal establishments to its own inland warehouses and when it sells to independent distributors and wholesalers; as a primary distributor when it ships fish from its inland warehouses either to its own wholesale branches or to independent wholesalers; and as a wholesaler when it sells to retailers and purveyors of meals fish received from its own warehouses or from independent distributors and processors. The Administrator quite properly refers to the complainant's operations as an integrated system.

Maximum prices at each of these levels of distribution for both fresh and frozen fish are established by Maximum Price Regulation 579,[1] issued February 27, 1945 and effective March 9, 1945. Our discussion, however, unless otherwise indicated, will be confined to the provisions regulating sales of frozen fish since these provisions are in all material respects representative of the regulation as a whole.

Section 3.3 of the regulation defines a processor of frozen fish as "a person who owns the frozen fish before it leaves the original freezer". The complainant is by definition and in fact a processor. Specific maximum prices are set forth in five columns in Table 1B of Section 10.1 of the regulation, the lowest scale of prices being in Column I and the highest in Column V. Article III of the regulation establishes for a processor Column I prices if it sells to wholesalers and chain store warehouses (Section 3.3(d) (1)), Column II prices if it sells to retailers and purveyors of meals (Section 3.3(d) (2)), Column III prices if it sells from an inland warehouse to a wholesaler, chain store warehouse or retailer-owner cooperative wholesaler (Section 3.3(e) (1)) and Column IV prices if it

sells from an inland warehouse to a retailer (Section 3.3(e) (2)). The complainant, being a processor, may therefore charge Column I to Column IV prices. The highest level of prices, however, are those in Column V. They are available only to a wholesaler who purchases from a primary distributor or from the inland warehouse of a processor and sells to retailers and to purveyors of meals (Section 3.7(b)).

The complainant's entire integrated system including its inland wholesale branches, is treated by the regulation as solely a processor with respect to all sales by it of the fish which it has frozen. Being a processor it cannot be a wholesaler of its frozen fish, within the meaning of the regulation, since a wholesaler of frozen fish is defined in Section 3.4(a) of the regulation as "A person *other than a processor* who buys frozen fish for resale, and sells more than 20 percent of it to persons other than ultimate consumers." (Emphasis supplied.) Nor can it be a primary distributor of such fish, within the meaning of the regulation, since by the definition in Section 3.6 a primary distributor sale is a sale by a wholesaler. Consequently it may not charge Column V prices for its frozen fish at any level of distribution, since those prices are available only to wholesalers as defined in the regulation.

Moreover, even if the individual branch of the complainant be treated as a wholesaler it nevertheless may not charge Column V prices upon fish frozen by the complainant and procured from one of the complainant's inland warehouses. This is because in the opinion of the Administrator such an intra-company transfer of fish does not amount to a purchase by the branch from the warehouse within the meaning of the regulation. Nor may the branch even charge Column V prices upon frozen fish which it buys from a source wholly independent of the complainant and sells to a retailer or a purveyor of meals. For by Section 3.3(c) of the regulation "A person who is a primary processor with respect to more than 20 percent of the frozen fish of any species which he sells, is considered for the purposes of this regulation, a primary processor with respect to all the frozen fish of that species which he sells." Since normally the complainant is a processor as to more than 20 percent of its sales of each of the species of fish for

which maximum prices are established by the regulation the complainant and its branch organizations are required by the regulation to be treated as processors as to all the fish of that species which is sold by its branches no matter what the source of supply or the price paid.

The result of the application of these provisions of the regulation is that an independent inland wholesaler which procures its frozen fish from a primary distributor or from the inland warehouse of a processor may charge Column V prices whereas an inland branch organization of the complainant, though functioning in exactly the same way as an inland wholesaler and procuring its frozen fish in identical fashion, may not. It is clear from the statement of considerations accompanying the regulation that this is a proper interpretation of the regulation and that the Administrator intended that the complainant should be prohibited from charging the level of prices set out in Column V. As we have seen, the discrimination exists both as to fish which the complainant's inland wholesale branches procure from the complainant's warehouses and as to fish which they procure from independents.

The complainant protested the regulation insofar as it denies to it the right to sell frozen fish through its inland wholesale branches to retailers and purveyors of meals at Column V prices and the right to sell fresh fish at the comparable column price for that commodity.[2] The protest was referred to a Board of Review for consideration. The Board recommended that the protest be denied. The Price Administrator adopted the recommendation and denied the protest. The present complaint followed.

The complainant urges that the discrimination against it is arbitrary and capricious and that the regulation is, therefore, invalid. It urges further that the regulation compels changes in the business practices, cost practices and methods of distribution established in the industry and therefore violates Section 2(h) of the Emergency Price Control Act.[3]

This court has held that unless the apparent discrimination is required to effectuate one of the purposes of the act a regulation must be held to be arbitrary and capricious if its provisions are such that all persons who are similarly situated are not dealt with upon an equal basis but greater burdens are laid upon one than are laid upon others in the same calling and condition. Consolidated Water Power & Paper Co. v. Bowles, Em.App.1944, 146 F. 2d 492; Hawaii Brewing Corporation v. Bowles, Em.App.1945, 148 F.2d 846. Upon the application of this principle this court held a price regulation invalid because it subjected the complainant to a competitive handicap, not characteristic of the industry prior to price control, which was wholly unnecessary to effectuate the purposes of the act. Flett v. Bowles, Em.App.1944, 142 F.2d 559.

The Administrator defends the regulation on the ground that the discrimination was reasonable and necessary. He says that in it he was merely preserving the historical price and distribution structure which existed in the industry prior to price control.[4] He asserts that he provided margins for each distinguishable class of seller; that inland wholesalers fall into two natural classifications—large wholesalers who buy directly from the coast and wholesalers who operate small establishments, have no port connections and buy from larger inland wholesalers. As to the former, he allows prices determined on the basis of a margin over cost of acquisition from the coast; as to the latter, the prices are determined on the basis of a margin over their cost of acquisition inland.

It may be an economic fact that large inland wholesalers ordinarily have port connections and small inland wholesalers normally do not. It might also be that size and port connections would be a valid basis for classification. These are academic speculations only. Whatever significance the Administrator may have intended to assign to the size of the inland wholesaler he has utterly failed to express in the regulation, for the regulation provides but one

---

[2] The protest also raised an objection relating to the requirement of sales in carload lots by primary distributors and inland warehouses. The Administrator granted relief as to that objection by the issuance of Amendment No. 5 to the regulation and this objection is therefore not involved in this proceeding.

[3] 50 U.S.C.A.Appendix, § 902(h).

[4] It is not suggested by the Administrator, however, that the complainant's inland wholesale branches historically charged lower prices than the independent inland wholesalers with which they were in competition.

test. Any independent inland wholesaler who purchases frozen fish from a primary distributor or the inland warehouse of a processor may charge Column V prices no matter how large that independent wholesaler may be. On the other hand, no inland wholesale branch of the complainant may charge Column V prices no matter how small that branch establishment may be.

What has just been said is equally true of a classification based upon the presence or absence of a port connection for the inland wholesaler. Whatever the intention may have been, the regulation fails to carry out any such line of demarcation. An independent inland wholesaler may have port connections and may, in fact, buy certain species of fish at certain times directly from the coast. However, at other times the inland wholesaler may purchase the fish from a primary distributor or the inland warehouse of a processor. As to that fish the independent is entitled to charge Column V prices, even though it does have port connections. The complainant is not. Since neither the size of the establishment nor its port connections determines the prices which an inland wholesaler may charge, it follows that differences in size and access or non-access to port connections cannot be treated as justification for the price discrimination against the complainant which the regulation establishes.

■ The Administrator suggests that the higher level of prices in Column V is necessary in order to enable the small inland wholesaler to exist, whereas the higher prices are not essential in the case of an integrated seller such as the complainant. While this argument might perhaps have been advanced by a small inland wholesaler as a reason for obtaining a special price adjustment in order to maintain necessary distribution (compare Capital Foundry Co. v. Bowles, Em.App.1945, 146 F.2d 855) it is no answer to the complainant's contention that the provisions of the regulation which exclude it alone from the Column V prices amount to an arbitrary and capricious discrimination against it. Had the complainant sought to invalidate the regulation on the ground that the wholesale prices which it established were generally unfair and inequitable the profit experience of the complainant and other wholesalers operating under the regulation might have been relevant. But whether the complainant operates at a greater profit than other wholesalers by reason of its integration in one system of all levels of distribution is clearly without relevancy upon the issue whether the regulation discriminates arbitrarily and capriciously against it and in favor of others in the same calling and condition.

The provisions of the regulation to which the complainant objects are necessary, says the Administrator, in order to prevent evasive practices. He gives the following illustration: If the wholesale branch of the complainant at Cleveland were allowed to sell at Column V prices whenever it obtained its fish not directly from the complainant's coast warehouse but indirectly by shipment through some other inland storage warehouse of the complainant, such as that at Chicago, there would be a strong incentive to such indirect routing of fish from the coast in order to obtain Column V prices. Such practices according to the Administrator would be especially feasible in an integrated system such as the complainant's where interbranch transactions could be exploited.

The complainant disclaims any intention to engage in such evasive practices and states that it merely desires to be permitted to continue the practices which it has long followed. It suggests that the regulation can be so framed as to eliminate the discrimination against it while still preventing evasive practices. We see no reason why the regulation cannot be so drawn as to eliminate the discrimination to which the complainant objects without permitting any such abuse as the Administrator fears by the complainant and others who may be similarly situated. As we have seen the complainant's function of primary distribution is more than that of providing intermediate storage facilities. It gathers together fish and fish products from the various points at which they are produced and processed, stores them, assembles them, reassembles them and distributes them both to independent wholesalers and to its own wholesale branches in mixed lots to suit the needs of the wholesaler or branch. In other words the complainant not only makes the investment in the fish but performs services in regard to them which are essential to the wholesaler. The shifting from warehouse to warehouse which the Administrator foresees would be obviously purposeless and would not be a substitute for the real functions which the complainant normally performs.

■ We conclude that the regulation does discriminate against the complainant

insofar as it prohibits the complainant's inland wholesale branches from charging the level of prices permitted to competing independent inland wholesalers; that the discrimination is unreasonable and that the regulation is in that respect arbitrary and capricious. It is therefore to that extent invalid.

The complainant's assertion that the regulation compels a change in the business practices of the industry, contrary to the provisions of Section 2(h) of the act, requires little discussion. The complainant asserts that it is the industry. It relies upon the fact that it alone functions in a single integrated system at every level of distribution. However, the industry consists of all those who engage in the distribution of fresh and frozen fish. The more or less unique corporate structure of the complainant does not make it a separate industry. Indeed the complainant's principal argument already considered, itself proves the contrary. For if the complainant is not merely one member of a larger industry it could hardly urge that it had suffered discrimination in the industry. But a regulation which compels a change in the complainant's business practices does not violate Section 2(h) unless it also compels a change in the business practices of the industry as a whole. Safeway Stores v. Bowles, Em.App.1944, 145 F.2d 836.

A judgment will be entered setting aside Maximum Price Regulation 579 insofar as it establishes for the complainant's inland branch establishments maximum prices on wholesale sales which differ from those fixed by the regulation for competing independent inland wholesalers.