## RESER v. FLEMING.
### No. 319.

United States Emergency Court of Appeals

Heard at Dallas, Tex., July 11, 1946.

Decided Feb. 20, 1947.

Writ of Certiorari Denied May 19, 1947.

See 67 S.Ct. 1349.

Al M. Heck, Park Street, and W. W. Fowlkes, all of San Antonio, Texas, for complainant.

Josephine H. Klein, Attorney, of Washington, D. C. (Richard H. Field, General Counsel, Jacob D. Hyman, Associate General Counsel, and Rosanna A. Blake, Attorney, all of Office of Price Administra-

tion, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Complainant has been engaged by lumber mills for many years in selling lumber for resale at retail. In the past, for his services, he had been paid a commission on such sales. Wartime scarcities made his representation of the mills unnecessary, for they found no difficulty in selling directly to the lumber companies without the services of a commission salesman. Instead of trying to secure purchasers of their products, they arrived at the point where they couldn't satisfy the demand. Small retail lumber companies, known as "independents," that wanted shingles, found it much more difficult to obtain them than did the larger concerns, referred to in the briefs as "line or chain yards."

One of the reasons assigned for this difficulty on the part of the smaller companies was that they could not afford to employ a full-time purchasing agent. They had never felt this lack before, because of the fact that, instead of their seeking to purchase, the mills had always sought to sell to them. Now, with changed conditions, the larger companies availed themselves of the services of their full-time purchasing agents and were able, through the efforts of such employees, to secure their purchases of shingles at the mill.

Finding himself in the predicament of being out of a job because the mills no longer needed his services as a selling representative, and seeing that the smaller companies needed someone to represent them to secure shingles from the mills, complainant asserts that he became a buyer's agent, and, as such, the representative of many small lumber concerns.

However, complainant found himself confronted by Revised Maximum Price Regulation No. 164, which, in Section 9(c) thereof, provided: "It is unlawful for any person to charge, receive or pay a commission for the service of procuring (including buying, selling or locating shingles or for any related service such as 'expediting')

which does not involve actual physical handling, if the commission plus the purchase price results in a total payment by the buyer of shingles which is higher than the maximum price of the shingles. For purposes of this regulation a commission is any compensation, however designated, which is paid for the procurement of shingles. This prohibition has no application to the case of a bona fide employer-employee relationship where the employee serves only one employer, insofar as shingles procurement is concerned, and where the compensation paid by the employer is a fixed salary and is not based directly or indirectly on the quantity, price or value of the shingles in connection with which the service is rendered."

Under the foregoing provision of the regulation, complainant was prohibited from receiving payment of commissions on any purchase he made on behalf of his clients if the commission, so paid, plus the purchase prices of the shingles, exceeded the maximum price fixed by the regulation for the sale of shingles.

While complainant was thus prohibited from receiving compensation from his clients for his services in securing shingles for them, such prohibition had no application to an employee who secured shingles for a single employer, and who was paid, not by commissions, but by a fixed salary. It is the contention of complainant that this provision of the regulation resulted in unlawful discrimination, and that the Price Administrator had no right to authorize compensation to be paid to an employee engaged in the business of purchasing shingles, merely because he served only one employer, and was paid a fixed salary, while, on the other hand, he denied the right to compensation to complainant, simply because he represented several small lumber companies and was paid on a commission basis.

Complainant attacks the section of the regulation under consideration not only on the ground that it resulted in unlawful discrimination, but also for the reason that it was in direct violation of the express language of the Price Control Act, 50 U.S.C. A.Appendix, § 901 et seq.; that it was an unconstitutional deprivation of his right to

work; that it was arbitrary because wholly unnecessary for the effectuation of the purposes of the Act; and that it violated the "historic practices" section of the statute. (Section 2(h) of the Emergency Price Control Act of 1942, as amended.)

Before proceeding to discuss the issues, we may observe that the history of the section of the regulation here in question, briefly, is as follows: All maximum price regulations (in dollars and cents figures) in the lumber field originally provided the same ceiling prices for sales by mills, concentration yards, office wholesalers, and commission salesmen. On February 17, 1943, provisions were added to the outstanding lumber regulations expressly prohibiting the payment and receipt of any commission for the "finding" of lumber if the commission plus the price of the lumber exceeded the ceiling established by the regulations. 8 F.R. 2192. On October 26, 1943, the wording of this prohibition was changed to the form in which it now appears in most of the lumber regulations. 8 F.R. 14310. This provision is the section of Revised Maximum Price Regulation No. 164, here under attack.

■ We shall discuss, first, the contention of complainant that the section of the regulation, here in question, is in violation of the express language of the Price Control Act.

Section 9(c) of Revised Maximum Price Regulation No. 164, as has been said, prohibits payment of compensation to any person, including an employee, for services in procuring shingles, if the compensation plus the purchase price results in a total payment, by the buyer of shingles, which is higher than the maximum price of the shingles—unless such employee is a full-time employee, paid by a fixed salary. However, Section 302 of the Emergency Price Control Act, as amended, provides: "That nothing in this Act shall be construed to authorize the regulation of * * compensation paid by an employer to any of his employees." (Section (c) (1) ).

The section of the regulation before us purports to regulate the compensation paid by an employer to certain employees, that is, (1) those employed to procure shingles and whose compensation is based upon quantity, price, or value of the shingles; and (2) employees who may be working, at the same time, for another employer, or part of whose time is devoted to services for another, or other, employers.

In whatever way, therefore, that the regulation attempts to regulate the payment by an employer of compensation to any employees, it is void, as being in direct contravention of the statute.

■ Counsel for the Administrator seek to avoid the foregoing conclusion by the claim that, under Section 302(c) of the Act,* the Administrator, by virtue of his authority to regulate the price of commodities, may regulate, as commodities, "services rendered otherwise than as an employee in connection with the processing, distribution, storage, installation, repair, or negotiation of purchases or sales of a commodity." It is argued that in this case services in connection with the procurement of shingles, rendered otherwise than as an employee, result, under the definitions of the statute, in such services being commodities subject to price regulation. Accordingly, it is maintained that the Price Administrator has the right to establish and control maximum prices for such services where performed by a person other than an employee. But the regulation is concerned with services which are rendered by employees; and it prohibits payment of any compensation to anyone, even an employee, for the service of procuring shingles, where such an employee serves more than one employer, or where his compensation is based on the quantity, price, or value of the shingles.

■ We are unable to follow counsel for the Administrator when they say that this section of the regulation made it clear that the Administrator was not seeking to regulate "compensation paid by an employ-

---

* Section 302(c) provides:
"As used in this Act— * * *
"(c) The term 'commodity' * * * includes services rendered otherwise than as an employee in connection with the processing, distribution, storage, installation, repair, or negotiation of purchases or sales of a commodity * * *."

382

er to any of his employees." As we have indicated, no matter what his purpose, that is what he actually did in all cases where employees work for more than one employer, or where they were paid on the basis of quantity, price, or value of commodity purchased. Counsel further say that the section of the regulation "purports to control only the payment of 'a commission for the service of procuring' shingles. It was not the Administrator's intention to control any wages or salaries." But the very language of the section of the regulation, controlled not only the payment of a commission for procuring shingles, but all compensation, "however designated, which is paid for the procurement of shingles." The regulation provides: "For purposes of this regulation a commission is any compensation, however designated, which is paid for the procurement of shingles." The fact that the Administrator did not intend to control, or did not control any *wages* or *salaries* is irrelevant. Section 302 of the Act prohibited the Administrator from regulating, not, specifically, wages and salaries of employees, but "compensation paid by an employer to any of his employees." This means compensation of any kind paid to any employee. In this case, the Administrator attempted to regulate compensation to employees, and the regulation, in so far as it does so, is invalid.

■ Not only, however, are we of the opinion that the regulation violates the Act in seeking to regulate compensation of employees contrary to the express provisions of the statute, but we consider that it is arbitrary in its discrimination between employees, and in its denial of the rights to compensation to those who work for several employers, while authorizing the payment of compensation, for the same kind of service, to employees who serve only one employer. Neither is there justification in refusing the right of compensation to employees who are paid by commission on sales or purchases, and allowing it to others who are paid by fixed salaries, for the rendering of the identical service.

■ Likewise, the discrimination resulting between lumber companies, when small concerns are told that they cannot hire part-time employees, or pay any employees on a. commission basis, for procuring shingles, while large corporations are allowed to use full-time employees on fixed salaries, to perform these same duties is unjustified. The Administrator cannot say to employees: You can only perform this service if you work for a single employer, and are paid only by a fixed salary. He cannot say to an employer: You can only hire full-time employees for this service, and you must not pay them on a commission basis, but only on a fixed salary basis. The opinion expressed by the Board of Review, which was adopted by the Administrator, and which embodied the reasons why he denied the complainant's protest, states: "Although it may be that large lumber companies may thus employ purchasing agents, and expend relatively large sums of money for expenses of such purchasing, in the form of salaries and expense accounts for such purchasing agents, any advantage accruing to such large companies is inherent in, and merely one manifestation of the economic, competitive advantages which large organizations generally enjoy." But, in this case it is certainly to be emphasized that the advantage mentioned accruing to large corporations from the employment of highly paid purchasing agents, was an advantage which largely resulted because the Administrator's regulation prohibited small companies from the only method of which they could avail themselves to meet such competition —employment of part-time purchasing agents, paid on a commission basis. The burden thus placed upon part-time employees or employees paid on a commission basis engaged in the business of procuring shingles, was one which practically excluded them from pursuing their business. The burden placed upon small lumber companies, compelling them to engage only full-time employees on a fixed salary basis, if they wished to avail themselves of such employees' services in procuring shingles, was a burden that obviously would result in a deprivation of these services to small companies, while enabling large corporations to secure the full advantage of such services. Where greater burdens are placed upon

one employee or one employer than are laid upon others in the same calling and condition, the result is unlawful discrimination, and we find such to be the effect of the section of the regulation here under attack. Flett v. Bowles, Em.App.1944, 142 F.2d 559; Consolidated Water Power & Paper Co. v. Bowles, Em.App.1944, 146 F.2d 492; Hawaii Brewing Corp. v. Bowles Em.App.1945, 148 F.2d 846; Booth Fisheries Corp. v. Bowles, Em.App.1946, 153 F.2d 449; Bayuk Cigars v. Porter, Em.App. 1946, 154 F.2d 503.

 Counsel for the Price Administrator contend that complainant is not in a position to raise the question that the regulation discriminates between employees of different classifications—that is, part-time and full-time, and those paid by commission, and by fixed salary. It is maintained that complainant was not an employee, and that he did not establish that he proposed to enter any employment relationship. If the regulation is unlawful in its application to part-time employees, however, there appears no reason why anyone who in good faith claims to be such an employee, and who is, therefore, aggrieved by its application cannot attack it for invalidity. Upon the record in this case we cannot say that the complainant's contention as to his part-time employee status is not made in good faith. It is our conclusion, therefore, that Section 9(c) of Revised Maximum Price Regulation No. 164 is invalid in so far as it prohibits the receipt of a commission by a part-time employee for services in procuring shingles for an employer.

On a still further ground, complainant contends that the regulation was invalid, inasmuch as it did not effectuate the purposes of the Act. To this claim, the Price Administrator answers that the regulation was aimed at keeping down the prices of shingles and thus avoiding inflation. But complainant says that the small lumber companies for whom he acted were not only willing, but desired to avail themselves of his services; and that they themselves would have absorbed the cost of the commission paid to him, and would not have passed this expense on to the ultimate consumer. Complainant alludes to the fact that there was a definite ceiling price on the shingles to such consumers, and this was the price at which they would be able to purchase, whether complainant was, or was not, paid a commission. To the suggestion that inflationary pressure might, because of the payment of such commission, break through the ceiling price and make price control more difficult, complainant declares that the same pressure was already there on the part of the large lumber companies that expend substantial sums of money in the form of salaries and expense accounts for their full-time purchasing agents, and, at the same time, absorb that cost, with the result that they sell the shingles at the fixed ceiling price. There seems to me much merit in complainant's contention that under the circumstances above mentioned, the regulation inflicts needless hardship upon part-time purchasing employees, and purchasing employees who are paid by commission, as well as agents and "commission men" who perform similar services.

The significance of the foregoing contention resides in this: That while we have held invalid that part of the regulation which purports to prohibit part-time employees paid by commissions from being paid or receiving remuneration for their services, in the procurement of shingles, there remains unaffected by our determination the remaining portion of the section of the regulation in question: "It is unlawful for any person to charge, receive, or pay a commission for the service of procuring (including buying, selling or locating shingles or for any related service such as 'expediting') which does not involve actual physical handling, if the commission plus the purchase price results in a total payment by the buyer of shingles which is higher than the maximum price of the shingles. For purposes of this regulation a commission is any compensation, however designated, which is paid for the procurement of shingles."

 The foregoing portion of the regulation, if valid, would prohibit the payment of commissions or remuneration for services in procuring shingles to any persons other than those serving in the capacity of employees—whom we have heretofore

determined to be entitled to such remuneration. Accordingly, independent contractors and those similarly engaged would fall within the inhibition of the regulation.

Complainant urges that the regulation could be framed to effectuate the purposes of the Act in avoiding inflation, and at the same time could provide for the payment of a commission to a part-time employee, or to a commission man or independent contractor. For it is declared that, by providing that such a commission in a specified amount might be absorbed by a lumber company, and not passed on to the ultimate consumer, there would be no more danger or likelihood of inflation or of increase of price to the public than exists by reason of the payment of fixed salaries to full-time purchasing agents employed by the larger lumber companies. See Bayuk Cigars, Inc., v. Porter, supra. The adoption of such a view would place agents, independent contractors, and commission men, who were performing the same services as employees engaged in procurement of shingles for lumber companies, in the same situation. I do not see why that should not be the result, but my brethren differ from me in this view, and accordingly, it is our determination that that portion of Section 9(c) of Revised Maximum Price Regulation No. 164 last above quoted, is valid, and is hereby sustained.

While we have held that the regulation is invalid in so far as it prohibits receipt of payment of commissions by a part-time employee for services rendered in the procurement of shingles, we do not decide whether the complainant is right in his assertion that he acted as an employee, rather than in some other capacity, in the course of the various transactions in which it is alleged that he violated the regulation and for which he is at present being prosecuted in the district court. The applicability of the regulation, limited as we hold it must be to transactions not involving compensation paid by an employer to any of his employees within the meaning of Section 302(c) (1) of the Emergency Price Control Act, to the facts of the complainant's various transactions does not involve the question of the validity of the regulation. Whether the complainant acted as an employee, within the meaning of the Act, in some or all of these transactions is, therefore, merely a matter of defense in the criminal proceedings now pending against him in the district court. Accordingly that court is not only empowered to consider this defense but it is the right of the defendant to have the defense passed upon by the court and jury to which are committed the determination of the question whether he is guilty of a criminal violation of the Act.

Our determination makes it unnecessary to discuss other arguments advanced by counsel, and it is needless to consider the additional evidence sought to be introduced by motion of the Price Administrator.

In accordance with the foregoing, a judgment will be entered declaring that Section 9(c) of Revised Maximum Price Regulation No. 164 was invalid from the date of its issuance, in so far as it prohibited the receipt of a commission by a part-time employee for services in procuring shingles for an employer.