203 F.2d 364
 GREGORY
v.
BARR, Acting Director of Rent Stabilization.
 No. 625.
 United States Emergency Court of Appeals
 Submitted March 23, 1953.
 Decided April 9, 1953.
 
 Alphonse Cerza, Chicago, Ill., for the complainant.
 Charles P. Liff, Chief, Appeals Section, Washington, D. C., with whom Robert A. Sauer, Acting Gen. Counsel, J. Walter White, Asst. Gen. Counsel, Washington, D. C. and Erwin Kahn, New York City, were on the brief, for respondent.
 Before MARIS, Chief Judge, and McAlLISTER and LINDLEY, Judges.
 LINDLEY, Judge.
 
 
 1
 By this action, brought pursuant to Section 408(a), of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2108(a), complainant seeks to have set aside an order of respondent, Acting Director of Rent Stabilization, denying complainant's appeal from an order of the Area Rent Director for the Chicago Defense-Rental Area, denying decontrol of certain housing accommodations. The jurisdiction of this court has been properly invoked. Dargel v. Henderson, Em.App., 200 F.2d 564.
 
 
 2
 Complainant owns a two story building located at 1923 Belmont Avenue in Chicago. On February 29, 1952, he filed with the Area Rent Director, a petition for decontrol of the two apartments located on the first floor, asserting that he had converted, by substantial alteration and structural changes, what had previously been one apartment into two self-contained family units. He averred that each apartment thus created contained: (1) a private entrance; (2) a bathroom equipped with flush toilet. He submitted floor plans revealing that each contained also at least one room in addition to the kitchen and bath, and attached copies of contracts and bills for material and labor incurred in completing the conversion.
 
 
 3
 The first floor originally consisted of five rooms (living room, dining room, kitchen and two bedrooms, bath and closed-in porch), constituting a one family unit, occupied by one Helen Foltz. According to answers to questions propounded to complainant, when the alteration work began, Foltz moved "in the front half of the bldg.", in the "3 front rooms". There she remained and, so far as the record discloses, is still a tenant. Originally the three front rooms were the living room, dining room and a bedroom of the then existing 5 room unit. Following conversion they comprised a new unit consisting of a living room, kitchen, bedroom and bath.
 
 
 4
 Upon complainant's petition for decontrol, the Area Director entered an order decontrolling the newly created rear apartment (consisting of a kitchen, bedroom, bath and closed-in porch) but denied decontrol of the new front room apartment because the "tenant [was] in possession during conversion."
 
 
 5
 On his appeal to respondent,[1] complainant asserted that "There is no provision of the Housing Regulation that provides that a tenant is not to be in occupancy while accommodations are being converted." The Expediter held that, inasmuch as the Area Director's finding that Foltz occupied the front apartment during conversion was fully substantiated by the evidence, the order denying its decontrol was "in accordance with the provisions of the Rent Regulation" and denied the appeal. In the complaint which followed, complainant avers that "the conversion of the first floor apartment into two apartments fulfills all the decontrol requirements of the Rent Regulation * * *."
 
 
 6
 At the outset we dispose of any possible controversy as to the facts. As we have observed, complainant informed the Director that Foltz occupied the three front rooms, during conversion. Upon this evidence, the Area Director reasonably concluded that Foltz's occupancy continued throughout the conversion. In his appeal and in his complaint before this court, complainant averred that Foltz moved first to the rear rooms, remained there until the alteration of the front unit had been completed, and then returned to the modified front unit. However, no proof was adduced in support of these averments. Therefore, under the record, Foltz occupied the front three rooms during conversion. We proceed upon that basis.
 
 
 7
 Section 202(c) of the Housing and Rent Act of 1947, as amended by the Housing and Rent Act of 1949, 50 U.S.C.A.Appendix, § 1892(c) provides:
 
 
 8
 "(c) The Term `controlled housing accommodations' * * * does not include —
 
 
 9
 * * * * * *
 
 
 10
 "(3) any housing accommodations (A) * * * which are additional housing accommodations created by conversion on or after February 1, 1947: Provided, however, That any housing accommodations resulting from any conversion created on or after the effective date of the Housing and Rent Act of 1949 (April 1, 1949) shall continue to be controlled housing accommodations unless the President [respondent by delegation] issues an order decontrolling them, which he shall issue if he finds that the conversion resulted in additional, self-contained family units as defined by regulations issued by him * * *."
 
 
 11
 Pursuant to the statutory directive to issue regulations defining "additional self-contained family units", respondent promulgated Housing Rent Regulation 1, 16 F.R. 12866, reissued 18 F.R. 1266, Section 56 of which is as follows:
 
 
 12
 "Section 56. Additional housing accommodations created by conversion. * * *
 
 
 13
 "(b) * * * On petition by the owner such a decontrol order shall be entered by the Director, if the following facts are established:
 
 
 14
 "(1) There has been a structural change in a residential unit or units involving substantial alterations or remodeling, and
 
 
 15
 "(2) Such change has resulted in additional, self-contained family units.
 
 
 16
 "(c) For the purpose of this section, the term `self-contained family unit' means a housing accommodation with private access, containing one or more rooms in addition to a kitchen * * and a private bathroom * * *."
 
 
 17
 There is no dispute that, as a result of complainant's structural changes, two self-contained family units in new form now exist where there was but one before. The sole controversy seems to be one of connotation or application of the word "additional", for it is only when additional accommodations are brought into existence, that an order of decontrol must be entered.
 
 
 18
 Respondent argues that only the rear apartment is an additional unit and that, therefore, it alone should be decontrolled. He distinguishes between the two completely new units solely because the front one was continuously occupied by Foltz; and insists that, because of this continuity of occupancy, the front unit remains the original unit, despite the structural changes made in it, and thus is not within the contemplation of the decontrol provisions of the Act and the regulation. In this respect he relies upon Woods for and on Behalf of U. S. v. Malas, D.C.W.D.Wis., 81 F.Supp. 485, and United States v. Patton Adjustments Inc., D.C.S.D.W.Va., 99 F.Supp. 644. Essentially his argument is that where one unit is converted into two, one unit will be decontrolled and the other remain under maximum control merely because the landlord permits the tenant to remain in the house during the remodeling. This results in control of one apartment and decontrol of the other.
 
 
 19
 But, in his brief, respondent himself informs us that he has not so administered the Act and regulations. Thus he poses the following fact situations and results:
 
 
 20
 1. A five room apartment, such as complainant's original unit; converted into two units as did complainant; vacant at the time of conversion; Result: decontrol of both units.
 
 
 21
 2. The same original unit and ultimate conversion; the original unit occupied when conversion is planned but vacated just prior to remodeling; original tenant returns to either of the "new" units after conversion; Result: decontrol of both units.
 
 
 22
 3. Same original unit and ultimate conversion; original unit occupied when conversion undertaken; tenant moves to two rear rooms while front three are converted, then moves into front three and remains there, two rear rooms are subsequently converted; Result: decontrol of both units.
 
 
 23
 4. Same original unit and ultimate conversion; original unit occupied prior to conversion; original tenant evicted pursuant to a certificate of eviction issued for purposes of remodeling and conversion by the Area Director; thus, as in No. 1 above, vacant at time of conversion; Result: decontrol of both units.
 
 
 24
 Other hypothetical situations might well arise, but it is not necessary to consider them, for, if we follow respondent's argument, to its logical conclusion, the result would be decontrol of both units in all situations save the instant one. He insists that only that portion of the original floor space which was unoccupied by the tenant during conversion may be decontrolled and suggests that the result here reached is supported by official interpretations of the Act and regulations dating back to 1948. See Interpretation 2, § 1(b) (2), 24 C.F.R. 444 (1949 ed.); Interpretation 1, § 1(b) (2) (vi) (b) — III, Vol. 6 ORS Manual.
 
 
 25
 Respondent pointedly states that "* * the sole issue within this Court's jurisdiction is whether the Respondent reasonably construed the regulation, i.e., Sec. 56 of Housing Rent Regulation 1, quoted supra, in denying decontrol of the subject unit." We rephrase his statement of the issue thus: May respondent lawfully distinguish between the situations previously stated in the hypotheticals mentioned and the instant case? We think not.
 
 
 26
 On the whole, respondent has usually decontrolled both new units. But from this pie of general interpretation he now cuts a single segment, based, so he says, on the fact that here, through "continuity of occupancy", the particular unit must be identified only as "the original one" and thus, not as an "additional" one. But, as a matter of fact, this front unit is no more the "original" because of Foltz' occupancy than it would have been had the tenant vacated during conversion, or moved first to the back and then the front. The occupancy did not affect the structural changes made in the process of converting one unit into two. We are here concerned with an attempt to supply adequate family dwelling structures and with the Congressional intent to encourage an increase in housing supply by removal of controls from newly created dwelling facilities. The increased supply provided by complainant is none the less such because Foltz occupied the front rooms during their conversion into a new unit.
 
 
 27
 We may not substitute our judgment for that of respondent in the exercise of his administrative discretion. However, it is within our authority to determine whether his orders are within the law and whether they are discriminatory or arbitrary. Fairness of treatment means uniformity unless there be some reasonable basis for distinction. "It is generally regarded as essential to fair treatment that all persons who are similarly situated be dealt with upon an equal basis * * *." Consolidated Water Power & Paper Co. v. Bowles, Em.App., 146 F.2d 492, 495. Thus, regulations and orders "must operate alike on other members of the class and must embrace all who belong in the same category." Hawaii Brewing Corp. v. Bowles, Em. App., 148 F.2d 846, 849. And so this court has consistently attempted to see to it "that no greater burdens be laid upon one than are laid upon others in the same calling and condition." Hawaii Brewing Corp. v. Bowles, supra, 148 F.2d at page 850. Here, we think, respondent has, by his application of Housing Rent Regulation 1, imposed greater burdens upon complainant than have been imposed "upon others in the same calling and condition."
 
 
 28
 Furthermore, we think neither the statute nor the regulation warrants respondent's interpretation. Section 202(c) of the Act, set out above, exempts from control "housing accommodations * * * created by conversion", provided the Expediter "issues an order decontrolling them". Such an order "shall issue if he finds that the conversion resulted in additional, self-contained family units * * *". The Act contains not the slightest intimation that decontrol shall be permitted for only the additional units supplied; the order is to enter for all units altered or modified by the conversion, provided the total reconstruction or conversion provides more units than formerly existed. The conversion must result in additional units; but there is not the slightest implication that only those units which exceed the original number are to be decontrolled. To construe the Act otherwise is to do violence to the language adopted by the Congress. Strictly within our interpretation is the suggestion of the former Expediter before the Congressional Committees that an order of decontrol should enter "Whenever the conversion results in additional self-contained family units." He made no assertions justifying any inference that decontrol should be limited to the additional units only.[2]
 
 
 29
 The same reasoning was followed in the Regulation, Rent Regulation 1 Section 56 reissued, 18 F.R. 1266, wherein the Expediter provided that a decontrol order should enter, if "there has been a structural change in a residential unit or units involving substantial alterations or remodeling" resulting "in additional * * * units." Thus we see that the Expediter followed the statute and provided for decontrol if the structural changes, the conversion, resulted in more units. Again there is not the slightest intimation in the regulation that, after conversion, though all units have been structurally changed or remodeled, only those which numerically exceed the original number shall be decontrolled. The fallacy in respondent's argument is that, instead of limiting the application of the word "additional" to the requirement that the conversion must result in a greater number of units, he seeks to apply the limitation to decontrol of the additional units, irrespective of the fact that all units have been changed and their identity completely destroyed. It is axiomatic that, while a statute or regulation may, on its face, be nondiscriminatory, a discriminatory application of that statute or regulation is nonetheless unlawful. Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220.
 
 
 30
 Judgment will enter directing respondent to enter an order of decontrol of the front apartment of the premises involved.
 
 
 
 Notes:
 
 
 [1]
 At the time complainant's petition was denied an administrative appeal was the proper method of challenging the Area Director's order. This was equivalent to a protest. See the Dargel case, supra
 
 
 [2]
 Hearings before the House Committee on Banking and Currency 81st Cong. 1st Sess. p. 1366; before the Senate Committee p. 107