## S. ROGGEN & CO., Inc., v. FLEMING, Temporary Controls Administrator.

### No. 336.

United States Emergency Court of Appeals.
Heard at New York City Aug. 14, 1946.

Decided Dec. 19, 1946.

MAGRUDER, Judge, dissenting.

Aaron L. Danzig, of New York City (Nemeroff, Jelline, Danzig and Paley, of New York City, on the brief), for complainant.

William R. Ming, Jr., Chief, Court Review Price Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and Samuel M. Singer, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

This controversy arises out of a protest, filed by complainant against the provisions of Revised Maximum Price Regulation No. 208 (Manufacturers' Maximum Prices for Staple Work Clothing) issued on August 16, 1944, and against Order No. 24 issued under Section 2.6 of the Regulation, on November 3, 1944. Order No. 24 established maximum prices for a certain coverall manufactured and sold by complainant.

Complainant was a New York manufacturer of sportswear in 1942. Because of

limited supplies of materials for men's shirts, and as a result of encouragement by the War Production Board to produce men's work clothing, complainant decided to engage in the manufacture of men's coveralls made of 8 oz. olive drab herringbone twill.

Section 2.6 of the Regulation provides for the establishment of maximum prices for new manufacturers of work clothing, and, among other matters, prescribes:

"The maximum price of a garment of staple work clothing which cannot be priced under Rules 1, 2, 3, or 4 shall be a price in line with the level of prices established by this regulation, determined by the Office of Price Administration upon application by the seller."

Rules 1, 2, 3, and 4, respectively, mentioned in the above section of the Regulation, are the same as Sections 2.2, 2.3, 2.4, and 2.5 of the Regulation, and established methods by which manufacturers with experience during or prior to March, 1942, could compute their own maximum prices. Under Rule 1, a seller's maximum price for a garment is the price set forth for the "same garment" on his last written price list generally circulated in the trade during or before March 1942, plus certain increases specified in Appendix B, with which we are not here concerned. Rule 2 prescribes a formula for determining the maximum price for a garment the same as one which the same seller manufactured during the year preceding April 1, 1942, but which could not be priced under Rule 1. Rule 3 provides a method for establishing the price for a garment by taking the base price to a purchaser of the same class, of that garment priced under Rule 1 which is nearest in cost of body materials, and is the "same" except for the replacement or curtailment, and adding (or subtracting, if the material cost of the garment being priced is lower) a sum calculated according to a stated formula. Rule 4 establishes the maximum price of garments with unusual dimensions or of substandard quality. The four above mentioned rules are referred to as "automatic rules for pricing."

Complainant was unable to price its coveralls under the automatic pricing rules set forth in Rules 1, 2, 3, or 4, because it was not engaged in the business of producing coveralls during and prior to March 1942, the date on which maximum prices were fixed under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq. Consequently, it requested that the Office of Price Administration establish for it a maximum price by specific order, in accordance with Section 2.6 of the Regulation. In making its request, complainant proposed a maximum price of $42 per dozen garments, on sales to independent retailers, and $39 per dozen on sales to wholesalers. It based its proposed maximum price on what it reported to be a direct cost of $35 per dozen garments.

Instead of fixing ceilings of $42 per dozen to independent retailers, and $39 per dozen to wholesalers, the Price Administrator, on November 3, 1944, by Order 24, established maximum prices to wholesalers at $29.57 per dozen garments, and, to independent retailers, at $32.85 per dozen garments.

Complainant sold its garments above the maximum prices so established by the Price Administrator, and on November 10, 1944, a suit for treble damages was instituted by the Price Administrator, charging that complainant had made sales in excess of the maximum prices established by Order 24. Subsequent to the commencement of such suit, complainant filed a protest against the order and Regulation, and, by stipulation, the proceedings now pending in the United States District Court for the Southern District of New York are awaiting the determination of the protest and complaint. The protest, upon which the complaint before us is based, is founded upon the following objections: that, by ignoring the prices set forth by complainant in its application to secure a maximum price, the Price Administrator's order fixed prices which would force the complainant to sell at a loss; that higher prices than those allowed to complainant had been granted under the regulations to competitors producing a comparable product; that the order was discriminatory and issued under an invalid regulation; and that it was arbitrary and capricious.

Complainant asked consideration of its protest by a Board of Review which, on August 25, 1945, recommended the denial of the protest, but, at the same time, suggested a survey of pricing standards in the light of problems growing out of the end of the war. Following the recommendations of the Board of Review, the Price Administrator, on April 17, 1946, denied the protest, and in his opinion stated that he deemed it inconsistent with price control to consider the elements of each case separately and submitted that they should be analyzed in reference to conditions prevalent in comparable manufacturing concerns. In arriving at his conclusions, the Price Administrator sought to establish some comparability between complainant and other producers of coveralls.

In his determination, the Price Administrator found that complainant was comparable to Blue Bell, Inc., a competitive producer of these garments, and that the garments manufactured by complainant should be compared to the garments manufactured by Blue Bell, Inc., in arriving at a maximum price for complainant based on prices in line with the level of prices fixed by the Regulation, in accordance with Section 2.6 thereof. The Price Administrator held that the complainant had not shown that the industry was generally unable to cover out-of-pocket costs in the manufacture of coveralls; that its evidence merely pointed to the fact that the maximum price, established for it, failed to cover its own out-of-pocket costs; that it had not alleged that its costs were representative of the industry's experience; that the information available to the Price Administrator from reports filed by Blue Bell, Inc. showed that that company's current maximum prices were above current out-of-pocket costs incurred in makin gand shipping them; and that complainant had not shown that the level of prices established by the order was not fair and equitable.

It seems especially pertinent, however, that on the review of the validity of the Regulation, the Price Administrator found that recent increases in material and labor costs and other factors necessitated an upward adjustment of the prevailing maximum price level, and as a result, issued Amendment 12 to the Regulation on April 17, 1946, permitting all sellers of staple work clothing, including complainant, to increase their maximum prices by varying percentages to reflect differential increases in fabric costs since 1942. This resulted in an average increase of 27% over the maximum prices of 1942. As explained in the Statement of Considerations accompanying the foregoing Amendment, increases in maximum prices were limited to the extent necessary to return to the industry its base period earnings. By this Amendment, complainant's maximum prices of $32.85 and $29.57 to independent retailers and to wholesalers and Group 1 retailers, respectively, became $44.07 and $39.67. In this controversy, complainant contests the validity of Order No. 24 establishing maximum prices for the coverall manufactured and sold by complainant, issued under Section 2.6 of Revised Maximum Price Regulation 208, which supplanted Section 1389.204(c) of Maximum Price Regulation 208.

Complainant advances three main contentions: First, it maintains that the maximum prices fixed for complainant by Order 24 were improperly established by standards of comparability between complainant and Blue Bell, Inc. and the garments manufactured by the two companies. It is maintained that the two companies did not produce coveralls made of the same material, and that, further, Order No. 24, here in question, was based upon the erroneous belief that complainant's firm was a non-union company. It is contended that complainant has sustained the burden of proof of the arbitrary nature of the Order by showing that there was established a price ceiling which made it impossible to sell coveralls at costs fixed by price controls on labor and materials.

On behalf of the Price Administrator, it is urged that the price established was fair and reasonable, even though it set prices below cost. It is submitted that the policy of the Price Control Act was designed to avoid inflation even though an individual producer suffered injury. It is further contended that the alleged lack of production

of coveralls was not due to insufficient maximum prices but to shortages of material and the diversion of materials to military production. Moreover, it is maintained that, although a loss was sustained in the manufacture of coveralls, a general profit was made by those who were engaged in manufacture of all types of work clothing.

Since the complainant was a new producer of coveralls, his prices would be governed by Section 1389.204(c) of Maximum Price Regulation No. 208. This provision was supplanted by Section 2.6 of Revised Maximum Price Regulation No. 208, on August 16, 1944. Complainant's application for price authorization was, however, filed before the issuance of the revised maximum price regulation, on August 10, 1944. But it was considered as though it had been filed under Section 2.6 of the Revised Regulation—which is the section therein that corresponds to Section 1389.-204(c) of the original Regulation. We shall consider the protest as filed against an order issued under the latter section. This provision requires that the maximum prices for new sellers be established in line with prices set for other competitive sellers already in the field.

To arrive at a determination of prices "in line" with prices set for other competitive sellers already in the field, closely comparable sellers should be selected; and, it is to be remarked that, under the former General Maximum Price Regulation, one of the tests for comparable commodities was that the "most comparable commodity" must belong to the narrowest trade category which includes the commodity being priced. See In the Matter of Marks & Son, 2 Op. & Dec. p. 366 (Pike &! Fischer). "The general maximum price regulation provided also that a seller's maximum price for items which he did not sell or offer for sale in March 1942, was to be fixed by comparison with his most similar product, or if he had no similar product, by comparison with the maximum price of the most similar product of his most closely competitive seller." In the Matter of Koppitz-Metchers, Inc., 2 Op. & Dec., p. 467 (Pike & Fischer).

Blue Bell, Inc., was chosen by the Price Administrator, as the manufacturer most comparable to complainant. However, as admitted by counsel for the Price Administrator, there were differences between the companies, both with regard to the cloth used by them in the manufacture of their garments as well as their respective volumes of production. It further appeared that Blue Bell, Inc. used non-union labor while complainant used union labor. The only factor which, seemingly, was considered of importance in setting the prices for complainant's product was the average difference in price of herringbone twill used by the complainant, and of denim used by Blue Bell, Inc. This average difference between the material costs of the complainant and Blue Bell, Inc., was added to complainant's material costs to produce the final maximum price established for complainant in Order No. 24.

In fixing the maximum prices for complainant, seven different companies had been cited, as representative companies engaged in the business in question, by the Office of Price Administration. Complainant, however, introduced in evidence letters from each of these companies in response to its inquiries concerning their production of coveralls. Three of these very companies relied upon by the Office of Price Administration in fixing the maximum prices indicated that they did not make coveralls; and the other four companies gave as a reason for their lack of production that the prices for coveralls had been frozen below cost or that the maximum price did not give a profit adequate to justify operation. Moreover, the experience of Blue Bell, Inc. disclosed that that company had discontinued the production and sale of the coveralls, which were claimed by the Price Administrator to be comparable to those manufactured by the complainant, because such garments could not be manufactured profitably under the maximum prices authorized; and it further appeared that Blue Bell, Inc. was able to resume the manufacture of such coveralls, only because of the relief granted to it under Amendment 3 of Revised Maximum Price

Regulation No. 208, to which relief complainant was not entitled.*

Further, complainant submitted that certain other companies and their methods and experience in making coveralls should have been used as comparable companies and comparable commodities in establishing prices for complainant in line with other sellers in the field during the base period. This was refused by the Price Administrator because of differences in advertising methods, manner of making sales, and manufacture of other kinds of work clothing; and the Price Administrator also sought to overcome complainant's claims by evidence introduced through the affidavit of the head of the Men's Clothing Section of the Office of Price Administration to the effect that the product of the complainant was inferior both to that of Blue Bell, Inc. and that of the other producers which had been proposed as comparable by complainant.

There is a presumption in favor of the validity and fairness of orders issued by the Price Administrator. Bowman v. Bowles, Em.App., 1944, 140 F.2d 974. But such presumption disappears upon the introduction of evidence to the contrary. Halibut Producers Cooperative v. Porter, Em.App., 1946, 157 F.2d 332. (decided September 11, 1946). Upon the introduction of evidence disclosing that such orders are capricious and arbitrary, or are not generally fair and equitable, the presumption in favor of the validity of the order disappears and the Price Administrator has the burden of going forward with evidence to support the validity of the order. In this controversy the evidence introduced by complainant was, standing by itself, sufficient to overcome the presumption of fairness and validity and to establish that the order was arbitrary for the maximum prices fixed thereby made it impossible for complainant and representative companies to produce and sell coveralls at the price set by the Price Administrator except at a loss. Moreover, the evidence of officials of the companies which were adjudged typical and representative of the industry by the

Office of Price Administration showed that insufficient maximum prices were perhaps the most important factor in the refusal of such concerns to continue their production of coveralls.

There is considerable discussion in the briefs of single product industries and multiple product industries, and it is urged by counsel for the Price Administrator that complainant did not submit sufficient evidence to prove that it could not have made up on other products losses suffered on coveralls, or that the other companies, proposed by complainant as comparable companies, could not have also operated generally at a profit in spite of losses of the manufacture of coveralls. We do not believe that such an obligation rests upon complainant in this case in view of the state of the proofs as they existed at the time of the filing of the Price Administrator's opinion and order. Enough evidence was submitted by complainant to overcome the presumption of the fairness and validity of the order. It is true that the Price Administrator contended that there were other causes for the inability and unwillingness of the companies, submitted as comparable companies by complainant, to manufacture coveralls. But he did not show that the maximum prices set therefor were not the cause of the cessation of production by representative firms. In fact, much of the evidence introduced and argument made on behalf of the Price Administrator's action in fixing the maximum price here in question demonstrated the correctness of complainant's contention that the Price Regulation prevented the manufacture and sale by representative firms except at a loss; and here it should be repeated that complainant's garments were "in-lined" by the Price Administrator, with the very same garments which Blue Bell, Inc. had discontinued manufacturing because they could not be manufactured profitably. Moreover, complainant showed that Blue Bell, Inc. and its products were not comparable to complainant and its products, because of the differences of materials

---

* Amendment 3 of Revised Maximum Price Regulation No. 208 set up a procedure whereby individual manufacturers, who were required to produce specified items of staple work clothing pursuant to order of the War Production Board, might apply for and be granted increased prices. 9 F.R. 13297.

712

used in the manufacture by the two companies, the differences in quantities of production, and the fact that the complainant was a company employing union labor and the other, a company employing non-union labor. These proofs unless overcome, further tended to establish that the order was arbitrary and capricious. The burden of disproving these conclusions was upon the Price Administrator. He did not assume this burden, and complainant's contentions must, therefore, prevail.

The Price Administrator maintains that it is wholly immaterial that the maximum prices that were established for complainant or any other manufacturer did not enable complainant or any other companies to manufacture coveralls at a profit—and that it is also immaterial that the maximum price fixed for Blue Bell, Inc. (with which concern complainant was purportedly "in-lined" by the Price Administrator) did not enable that company to manufacture coveralls at a profit. For it is said that whether such maximum prices enabled these various companies to manufacture at a profit, or forced them to do business at a loss—or to quit operations entirely—is of no concern, in this case, to the Price Administrator or to this court. Counsel for the Price Administrator claim that the sole determining factor here is whether complainant was properly "in-lined" with Blue Bell, Inc. This argument is based on the theory that, since the Regulation is assumed to be valid, the only question that remains is whether under Section 2.6 of the Regulation, the maximum price of complainant was in line with the level of prices established by the Regulation—that is, as the Price Administrator, in this case, contends, in line with the maximum prices established for Blue Bell, Inc.

With the foregoing contention we entirely disagree. Assuming that complainant was properly "in-lined" with Blue Bell, Inc. —a conclusion that, as has been said, is contrary to our view—nevertheless, if maximum prices had been fixed so low for Blue Bell, Inc. and the industry generally as to result in the impossibility of their continuing to operate at a profit, then such "in-lining" would be arbitrary and capricious. To this, it may be replied that, if the Reg-

ulation is valid, the "in line" price, under such Regulation could not be arbitrary. It is true, we cannot say that the Regulation, fair and proper, on its face, is invalid. But, uniquely, in this case, it would appear that orders purportedly issued under such a regulation may establish maximum prices so low that the industry generally is forced to discontinue its operations under such a price schedule, or to do business at a loss. This is the state of facts that was established in the prima facie case made by complainant. The order, establishing such a maximum price, is plainly arbitrary.

A judgment will be entered declaring that Order No. 24, issued on November 3, 1944, under Revised Maximum Price Regulation No. 208, was invalid from the date of its issuance.

MARIS, Chief Judge, concurs in the result.

MAGRUDER, Judge, dissents.