**STEEM ELECTRIC CO. v. FLEMING, Temporary Controls Administrator.**

No. 372.

United States Emergency Court of Appeals.

Heard at St. Louis Feb. 17, 1947.

Decided March 7, 1947.

John O. Hichew, of St. Louis, Mo., for complainant.

William R. Ming, Jr., Associate Gen. Counsel, of Washington, D. C. (Carl A. Auerbach, Gen. Counsel, and Miss Josephine H. Klein, Atty., Office of Price Administration, Office of Temporary Controls, both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant asserts invalidity of Order No. 2826 issued November 3, 1944 by the Office of Price Administration fixing complainant's maximum prices for steam electric irons under the provisions of Section 1499.158 of Maximum Price Regulation No. 188 as amended. The order fixed the ceilings of complainant's product for all sales made after Maximum Price Regulation No. 188 became applicable, the maximum price to distributors or jobbers being $5.21 and that to retailers $6.16, including delivery costs.

Complainant pleads three causes of invalidity: (1) Order No. 2826 "was not issued in accordance with the provisions of the Emergency Price Control Act of 1942, as amended [50 U.S.C.A.Appendix, § 901 et seq.], and with the provisions of Section 1499.158 of Maximum Price Regulation No. 188 as amended"; (2), the order is "violative of Section 2(h) of the Emergency Price Control Act of 1942, as amended," and (3) the prices established "were not in line with the level of maximum prices established by the said Maximum Price Regulation No. 188, as amended, and are, therefore, unlawful, arbitrary and capricious."

Respondent urges that the complaint should be dismissed because the record no longer reflects any justiciable issue. He relies upon an amendment to Order No. 2826, issued September 25, 1945. At that time the Administrator stated that he had learned from evidence recently procured that the "maximum prices for the comparable articles on the basis of which protestant's maximum prices were established by Order No. 2826 are f. o. b. prices" rather than delivered prices. Accordingly he directed that the order be amended to provide "that the prices established thereby are f. o. b. protestant's factory." He remarked further that, in view of the facts presented by the protestant, ceiling prices "should be established for sales of the iron without the accessories referred to, inasmuch as protestant is desirous of selling the iron without accessories." Consequently he also amended Order No. 2826 to include maximum prices for protestant's iron without a cord or asbestos pad. Inasmuch as the prices fixed in the order as originally promulgated were retroactive to the time when Maximum Price Regulation No. 188 became applicable, it is respondent's contention that this amendment, eliminating the requirement that complainant pay the freight and being an amendment to the original order fixing maximum prices, was likewise effective as of the time Maximum Price Regulation No. 188 became applicable. We think that under the circumstances presented here, complainant has no basis for attack upon the validity of the amendment on the ground that it applies retroactively. Had the amendment lessened the ceiling price and had the Administrator attempted to enforce such lessened ceilings retroactively a different question would be presented. See Section 205(d) of the Act and Collins v. Bowles, Em.App., 152 F.2d 760. Respondent contends also that the prices fixed by the amendment for sales without accessories, having been adopted at the request of complainant and being effective as a part of the original price fixing order, are applicable to all sales made since price control became effective. Respondent concedes that its enforcement action now pending against complainant in the District Court can be based only upon the amended prices, inasmuch as the amendment eliminated the necessity of paying freight or supplying accessories and thus reacted to complainant's benefit.

In view of these facts respondent insists that the question of validity of Or-

der No. 2826 from its original effective date until its amendment is no longer in controversy between the parties, for respondent can not insist in the enforcement action that complainant's ceilings are fixed by Order No. 2826. He readily concedes that if successful he could recover only for sales sold above ceilings prescribed by the amendment of September 25, 1945. Complainant does not attack the validity of that amendment. Indeed it concedes, for the purpose of disposition of this case, that the amendment is valid. It seeks only a declaration that the order was invalid between its original date and the date of the amendment. However, inasmuch as Order No. 2826 no longer controls but has been superseded by the amendment fixing new price ceilings, it seems obvious that there can be no bona fide controversy between the parties as to the validity of Order No. 2826. That order being no longer effective, any issue as to its validity is purely academic. We conclude that the complaint raises no justiciable issues as to the validity of Order No. 2826 and, inasmuch as it does not attack the amendment to the order, it must be dismissed.

■ If we assume that an issue of validity of the order between the date of its issue and the date of its amendment is properly presented, we find upon the facts of record that complainant has not proved its factual contentions. It argues in its brief and in oral argument that the order is invalid under Section 2(h) of the Emergency Price Control Act of 1942 because, as it says, the order established maximum prices on a delivered basis rather than on an f.o.b. factory basis and thus compelled it to change an established industry practice. Whether there was an established practice in the industry of making sales on an f.o.b. factory basis instead of on a delivered basis is a question of fact and upon that inquiry respondent points out instances of sales by complainant on terms other than f.o.b. its factory, some of them being shipments by parcel post and others "f.o.b. store door" and still others shipped prepaid with no additional charge for transportation. Thus it would seem clear that, upon the question of fact, inasmuch as there was substantial evidence to the contrary, complainant has failed to sustain the burden of proving an established practice in this respect in any industry.

■ There is a serious question also as to whether any separate industry was engaged in producing and selling these irons. Complainant relies upon the fact that there were only two companies making steam electric irons, but the Administrator insists that, under the circumstances presented here, to confine an industry to two producers is to construe the act too narrowly. Electric irons are widely made and sold and persons engaging in their production, numerous. The only difference between complainant's iron and other electric irons is that complainant's contains a reservoir holding water which is heated as ironing proceeds and is sprayed on the articles being ironed. The device is essentially an electric iron heated by electric current conducted to the iron through a cord and differs only from other electric irons in the addition of the water reservoir which is intended to eliminate the necessity of premoistening the articles ironed. To say that a separate industry must be made up of two companies making this specific electric iron and must exclude makers of all other electric irons, it seems to us, is far too narrow a construction of the term. As we remarked in Kinney Co. v. Porter, 157 F.2d 683, in discussing the hosiery industry, that the nylon industry and that of rayon and silk hosiery were quite generally the same, so here we believe that the electric iron industry can not be narrowly confined to two manufacturers when many others are engaged in the same industry though they do not produce this specific electric iron. See also Booth Fisheries Corp. v. Bowles, Em.App., 153 F.2d 449, and Interwoven Stocking Co. v. Bowles, Em.App., 141 F.2d 696. Complainant has failed to prove that there is a separate industry for this specific iron.

■ Complainant insists that the order also contravenes Section 2(h) of the Act in that it requires complainant to furnish a cord and asbestos stand as a part of the consideration for the sales price. But the order did not compel complainant to sell its iron with accessories. It fixed a price for sales with accessories but did not

foreclose the right of complainant to seek a ceiling price for irons sold without accessories by applying for and securing a maximum price therefor. The record is devoid of evidence presented to the Administrator at any time before complainant filed its protest that it desired to sell the iron without accessories, and, when the Administrator was advised that it did so desire, the order was amended to include a ceiling price without accessories.

■ Furthermore we think the evidence fails to support complainant's contention that it had an established practice of selling its iron without cord or stand. Complainant itself says that it discontinued supplying the cord because war needs resulted in the quality of available cord becoming inferior and made it impossible to procure metal stands for its irons, as it had customarily done before the war. Clearly the evidence indicated that prior to the war period, complainant had sold its iron with accessories; that that had been its customary practice and that its discontinuance of the practice arose from inability to procure satisfactory materials during the war period. We think that the evidence is such that the only proper conclusion of fact is that there was no industry practice applied with precision by complainant; that there was no practice consistently or uniformly applied by it and that the facts fell far short of proof of an established practice or means or aid to distribution. Wells Lamont Corporation v. Bowles, Em.App., 149 F.2d 364.

■ Complainant contends that the prices fixed by Order No. 2826 were not in line because (1) The comparable article considered was not in production at the time Order No. 2826 was issued; and (2) the order established maximum prices with certain accessories, while the comparable is alleged to have been sold without some of the same accessories. Again, the latter is a factual averment. The evidence discloses that the comparable was sold with the same or equivalent elements. Each had an electric cord. Then, too, the evidence is that, instead of having a separate stand for its iron, the comparable made a part of its unit an equivalent attachment forming a resting place for the iron. In this respect, too, we are compelled to conclude that the evidence is such that we would not be justified in holding that the Administrator has acted arbitrarily.

■ But, complainant says, the comparable was not being made at the time the comparison was made. As a matter of fact both manufacturers were compelled to desist from production because of dearth of material after early 1942 until 1944. Until February or March 1942, both the complainant and the comparable producer had manufactured and sold irons found to be comparable. Complainant resumed production many months later, in 1944, when materials became more plentiful, but its prices were fixed as of the time of effective price control. We know of no reason why the Administrator might not consider comparables as of the earlier date. There were no other comparable articles in production at the time the order was entered. Cf. Roggen v. Fleming, 159 F.2d 707. Complainant raises no question as to the propriety of early 1942 prices. We think the Administrator properly reverted to the period when the two comparables were being sold.

The factual issues have been decided against complainant's contentions. The evidence is controversial in part but it is not for us to weigh it. We can not properly nullify the order. Judgment will enter dismissing the complaint.