**KATZENBERG et al. v. CLARK, Director of the Division of Liquidation, Department of Commerce.**

No. 404.

Rehearing Denied Aug. 18, 1947.

United States Emergency Court of Appeals.

Heard at Philadelphia May 5, 1947.

Decided July 29, 1947.

Ben W. Heineman, of Chicago, Ill., (Swiren, Heineman & Antonow, of Chicago, Ill., on the brief), for complainants.

Israel Convisser, of Washington, D. C. (Carl A. Auerbach, Harry H. Schneider,

and Stanley Riesner, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

MARIS, Chief Judge.

The complainants, manufacturers of Women's garments, are subject to Maximum Price Regulation No. 570—Women's, Misses' and Children's Underwear, Nightwear and Negligee Garments.[1] The "brunch" coats which the complainants manufacture are properly classified in category 225 and the women's two-piece pajama sets in category 221, as those categories are described in Appendix A of Section 19 of the regulation.

Section 5(a)(2)[2] of the regulation prohibited deliveries of garments in categories 200 to 226 in selling price lines higher than the selling price line in which deliveries were made during the base period. Section 2 of the regulation provided the rules for the establishment of the applicable base period. Paragraph (a) of Section 2 provided that for those manufacturers who had delivered categories of garments subject to the regulation during both March and April 1942 the base period was March and April 1942. Such manufacturers were limited to the price lines for the categories based upon the delivered prices during that two-months period. Pargraph (b) of Section 2 provided that in the case of manufacturers who had for the first time delivered categories of garments subject to the regulation during the period after April 1, 1942 and prior to November 1, 1944 the base period was the two-months period following the first delivery of that category of garments. Such manufacturers were limited to the price lines for the categories based upon the delivered prices in that two-months period. They are referred to by the parties as "interim sellers." Manufac-

turers unable to establish a base period under Section 2 because they had made no deliveries between March 1, 1942 and November 1, 1944 were required by Section 8 of the regulation to apply for an order authorizing maximum prices. A manufacturer who made his first deliveries subsequent to November 1, 1944 but prior to January 22, 1945 was permitted by that section to deliver garments priced under the General Maximum Price Regulation until an order authorizing his maximum prices issued, provided he made application on or before February 15, 1945. A manufacturer who had made no deliveries prior to January 22, 1945, the effective date of the regulation, was prohibited by Section 8 of the regulation from selling or delivering any garments subject to the regulation until the order authorizing his maximum prices issued.

From 1941 and until June, 1942 the complainants manufactured a three-piece women's lounging pajama set consisting of a quilted brunch coat and a two-piece matching pajama set. The sale of three-piece garments was prohibited by a War Production Board Limitation Order issued June 1942, and consequently such garments were not listed in any of the categories described in the regulation. On June 24, 1942 the complainants made their first delivery of a separate quilted brunch coat in the selling price line of $6.75 and of a two-piece pajama set in the selling price line of $4.75. On October 9, 1942 the complainants made the first delivery of a quilted two-piece pajama set at $10.75. On June 1, 1943 the complainants made the first delivery of a quilted brunch coat at $7.00 and of a two-piece pajama set at $5.75. These prices were determined by the complainants by reference to the maximum prices of their closest competitors pursuant to the provisions of the General Maximum Price Reg-

---

[1] 10 F.R. 655, issued January 16, 1945 and effective January 22, 1945. Supplementary Order 193, issued November 12, 1946 (11 F.R. 13464) decontrolled these items.

[2] "Sec. 5. Highest price line limitation. You may not deliver any garment at a price higher than your highest price line limitation, * * *

"(a) Highest price line limitation for categories which you delivered during your base period.

*　　*　　*　　*　　*

"(2) Garments in categories 200–226 * * * Your highest price line limitation for a garment in categories 200–226 * * * is the highest price properly listed for a garment of the same category in column 2 of your pricing chart, * * *"

ulation. However, when MPR 570 came into force in January, 1945 the complainants' base period provided for by Section 2(b) of the regulation became the period June 24, 1942 to August 23, 1942, the two-months period following the first deliveries of separate brunch coats and two-piece pajama sets. Their highest permissible selling price lines for those garments consequently were reduced to $6.75 for the brunch coat and $4.75 for the pajama set.

The complainants protested the regulation, and their protest as amended was denied December 18, 1946. Their complaint was filed in this court pursuant to Section 204(a) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(a).[3]

It will be seen that the complainants were compelled to discontinue the price lines in which they were in fact selling in January, 1945, when the regulation was issued, and were required to return to the lower selling price lines in effect in the two-months period commencing June 24, 1942. On the other hand other interim sellers were permitted by the regulation to come into the field later at selling price lines which the complainants assert were already influenced by the inflationary spiral and were, therefore, higher than those prevalent in the first half of 1942, the only condition imposed by the regulation being that they made deliveries in those price lines prior to November 1, 1944.

The complainants contend that the highest price line limitation of MPR 570 is discriminatory and invalid in that by permitting new sellers to retain selling price lines adopted in a more recent base period it allows such sellers an unwarranted advantage over the complainants and others similarly situated who were required by the regulation to return to an earlier base period to determine their highest price line limitation. This discrimination, say the complainants, was not cured by the adjustment provision of the regulation.

We would be inclined to agree with the respondent that if the classification which the Price Administrator adopted was "based upon substantial distinction, with a proper relation to the objects classified and the purposes sought to be achieved" the differentiation to which complainants object would be wholly reasonable.[4] Thus in Modern Mfg. Co., Inc. v. Fleming, Em.App. 1947, 160 F. 2d 892, in answer to the contention that the different treatment accorded in Maximum Price Regulation No. 287 to new manufacturers who entered the field in the period April 1, 1942 to December 1, 1942 amounted to an arbitrary discrimination as against established manufacturers we said, page 896:

"Such manufacturers presented a special problem, and of course they had no March, 1942, experience. Without discussing the argument in detail, we state our conclusion that the classification was based upon a substantial factual difference, and that the method chosen by the Price Administrator for regulating the prices of this special class of interim manufacturers cannot be said to have been lacking in a rational basis or to have constituted an arbitrary discrimination as against established manufacturers."

In promulgating MPR 570, however, the Administrator was apparently himself of the opinion that the scheme of the regulation might result in undue dicrimination. Thus in his Statement of Considerations Accompanying MPR 570 he said:

"Pricing charts of persons who entered business after March 31, 1942 and who are using their first two months of deliveries as base periods are deemed to be only provisional pricing charts and will be adjusted to conform to March and April price levels. This must be done for two reasons: First, the retention of the prices adopted in a more recent base period would allow new firms an unwarranted competitive advantage over those firms who are required to return to an earlier base period to determine highest price line limitations. Second, the pressures of the war-time economy induced many persons to begin business at price

---

[3] The issue is not moot since there is now pending in the United States District Court for the Northern District of Illinois an enforcement proceeding instituted by the Price Administrator for the alleged violation by the complainants of the highest price line limitation provision of the regulation.

[4] Pfeiffer Brewing Co. v. Bowles, Em. App., 1945, 146 F.2d 1006.

levels considerably higher that the general level of prices in March and April 1942. Although approximately 200 firms entered this industry between March 1942 and January 1945, the great bulk entered into competition with the high priced firms of the industry, and few chose to compete with the sellers of low or volume priced merchandise."

It thus appears that the Administrator recognized the need to take measures to do away with the "unwarranted competitive advantage" which interim sellers and new sellers were given by the regulation. The Administrator might have provided that without regard to the actual date of his first delivery each interim seller was entitled to deliver garments in his highest price line at the close of the April 1942-November 1944 period. Under such a rule interim sellers who made their first deliveries in the early part of that period, as was the case with the complainants, and subsequent interim sellers who did not make their first deliveries until the end of that period would have identical base periods. From the standpoint of the complainants such a provision would have been non-discriminatory. Such a provision, however, would have to some extent frustrated the accomplishment of the principal objective which the Administrator had in adopting the highest price line limitation since it would have made permanent the increases due to the "trading-up" practices which the Administrator found to be prevalent in the industry. The Administrator's solution of the problem was not to permit the raising of the highest price line limitations of the earlier interim sellers, as just suggested, but rather to provide for adjustment downward of the highest price line limitations of the more recent sellers.

Assuming, but not deciding, that in the absence of an effective adjustment provision the regulation discriminated unfairly between the complainants and other interim sellers who came into the industry later than did the complainants we come to the narrow, but crucial issue raised by the complainants, namely, whether the discrimination was obviated by the adjustment provision which the Administrator placed in the regulation.

The adjustment provision applicable to interim sellers is found in Section 7 and provides:

"At any time after the filing of pricing charts, the Office of Price Administration may adjust your highest price line limitations and maximum price-cost-ratios if they are not in conformity with the previous business experience of the persons who were owners or key employees of your organization on January 16, 1945."

The complainants urge that this adjustment provision was inadequate for several reasons which we shall proceed to consider.

The complainants first suggest that Section 7 did not authorize the adjustment of the highest price line limitations of those interim sellers who had no previous business experience in the needlework industries. It follows, the complainants say, that the unfair advantage which such sellers might have could not be overcome by the downward adjustment of their highest price line limitations. This argument is valid only if the narrow construction placed upon Section 7 by the complainants is justified.

Section 7, however, requires that interim sellers file a statement setting forth, inter alia, the "(c) Names of all owners, officers, principals and key employees on January 16, 1945" and "(d) Previous business connections in needle work industries of all owners, officers, principals and key employees since 1940." That the Administrator considered the previous experience of key employees of the same significance as that of the owners themselves may be seen from the Statement of Considerations in which he said: "the usual considerations which determine the price levels at which a new firm in this industry will enter the market, are the previous experiences in the industry, or in closely allied industries, of the owners or responsible employees of the new firm" and that "a high degree of knowledge and skill are necessary for successful operation of a business in this industry so that it would be virtually impossible for a firm to enter the business unless its owners or responsible employees had had considerable

previous experience." The experience of the responsible or key employee was, therefore, thought by the Administrator to be the equivalent of the owner's own experience.

■ The respondent construes Section 7 as authorizing the Price Administrator to adjust the highest price line limitation of any interim seller to conform to the selling price line in which either the seller himself or a responsible employee had had previous experience at or about the March-April 1942 base period. The complainants have not attempted to contest the factual basis of the respondent's argument by evidence that there actually were interim sellers who came into the industry without either themselves having previous experience in the needlework industries or employing others in responsible or key positions with such experience. Only by showing that there were such interim sellers could the complainants establish the necessary factual basis for their contention. In the absence of such evidence, therefore, we must conclude that there is no merit in the complainant's attack upon the adjustment provision on the ground that it did not apply to all interim sellers.

In reaching this conclusion we have not ignored the complainants' argument that the Administrator must not have intended to provide in Section 7 for the adjustment of the prices of sellers coming into the industry without previous experience because in Section 8, which related to sellers coming into the industry after November 1, 1944, he made express provision for such sellers. The point loses its force when it is observed that Section 8 did not take account of the experience of key employees. In that section sellers who were themselves without experience but who entered the industry with the aid of experienced employees were classed as sellers without experience. It was this group to which the provision of Section 8 referred to by the complainants related. But, as we have seen, Section 7 regarded any seller who came into the field with experienced personnel as being subject to price adjustment to the same extent as a seller who was himself experienced. It was, therefore, unnecessary in that section to make express provision for that group.

The complainants make a plausible argument that it was unjust to permit a new seller freely to choose the selling price line in which he desired to sell without regard to the highest price line limitation of the regulation by the simple expedient of hiring a key employee who had experience in that selling price line. This argument overlooks the chronological sequence involved. MPR 570 was not issued until January 16, 1945. During the period from April 1, 1942 to November 1, 1944 MPR 570 was not in existence and the GMPR was the controlling regulation for the industry. That regulation contained no highest price line limitation provision. There would, therefore, at that time have been no purpose such as is suggested by the complainants of evading the highest price line limitation by the expedient of hiring a key employee with previous experience.

Even if Section 7 is sufficiently comprehensive to confer authority upon the Administrator to adjust the highest price line limitations of those interim sellers who entered the industry without themselves having had previous experience in the needlework industries the complainants profess to find it inadequate from a functional standpoint. They assert that though Section 7 may confer such authority upon the Administrator it imposes no duty upon him to make the adjustments. They consider "previous business experience" to be so vague a phrase as to provide the Administrator with no standard for the exercise of his discretion. They pose the hypothetical case of a seller whose previous business experience in the needlework industries was in men's or women's outerwear garments and assert that there could be no logical basis for the Administrator to conclude what price line such a seller would have selected in the negligee field in March and April, 1942.

■ We can see no valid objection to the regulation in the fact that the duty to adjust is not mandatory. If the facts should warrant it a refusal by the Administrator to exercise his discretion by making an appropriate downward adjustment might well be arbitrary and capricious. The person to whom a duty is confided requiring the exercise of judgment in its performance must

necessarily be given discretion in its exercise. Any adjustment problem, including that dealt with in Section 7 of the regulation, requires the exercise of judgment.

The illustration which the complainants give in support of their argument that the adjustment provisions of Section 7 are too vague is far fetched. Manufacturers of men's outerwear garments were most unlikely to enter the highly specialized industry subject to MPR 570, of which the manufacture of women's negligee garments is a part, without some one actively engaged in the business having had some experience in that particular field. Indeed the Statement of Considerations from which we have quoted makes this abundantly clear. Nor have the complainants presented any evidence that among the 200 or more new sellers entering the industry after March 1942 there were some with no such experience on the part of either owners or key personnel.

■ We conclude that the highest price line limitation provisions of MPR 570 did not invalidate the regulation.

A judgment will be entered dismissing the complaint.