**MARKEREITER et al. v. WOODS, Housing Expediter.**

**No. 462.**

United States Emergency Court of Appeals.

Heard at New York June 21, 1948.

Decided Sept. 14, 1948.

Henry N. Rapaport, of New York City (Rapaport Brothers and Babette Kurtz, all of New York City, on the brief), for complainants.

Charles P. Liff, Chief, Appeals Section, of Office of Housing Expediter, of Washington, D. C. (Ed Dupree, Gen. Counsel, Robert A. Sauer, Asst. Gen. Counsel, and Philip Travis and Eleanore R. Kerber, Attys., all of Office of Housing Expediter, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

MARIS, Chief Judge.

The complaint now before us challenges the validity of Amendment 25 to the Rent Regulation for Housing in the New York City Defense-Rental Area. That amendment related solely to housing accommodations in multiple unit buildings in the City of Long Beach and involved only the summer season of 1946. Long Beach is a summer resort on the south shore of Long Island in the New York City Defense-Rental Area. It has a permanent population of about 12,000 and a summer population of over 50,000. The Rent Regulation for Housing in the New York City Defense-Rental Area was issued by the Administrator on October 8, 1943, effective November 1, 1943.[1] The maximum rent date for the area was March 1, 1943. Section 1(b) of the regulation enumerated certain types of housing accommodations which were not subject to rent control. On February 21, 1944, the Administrator by Amendment 4[2] added paragraph (6) to Section 1(b) of the regulation the effect of which was to exempt all resort housing in the area from rent control for the summer season (June, July, August and September) of 1944. Resort housing was defined as housing accommodations located in a resort community and customarily rented or occupied on a seasonal basis which were not rented at any time between November 1, 1943 and February 29, 1944. The exemption of resort housing was renewed for the summer season of 1945 by Amendment 16 issued February 2, 1945.[3] By Amendment 22 issued February 15, 1946,[4] the exemption of resort housing was again renewed for the summer season of 1946, namely, from June 1, 1946 to September 30, 1946.

On March 12, 1946, a large apartment house in Long Beach, known as the Broadway Apartments, was partially destroyed

---

[1] 8 F.R. 13914.
[2] 9 F.R. 2087.
[3] 10 F.R. 1452.
[4] 11 F.R. 1774.

by fire, rendering approximately 100 families homeless. The Broadway Apartments had been occupied during the entire year and the rents were, therefore, subject to rent control under the regulation. On the ground that a critical housing shortage had been brought about by the fire and that many veterans were without housing, municipal and state authorities at once urgently requested the Price Administrator to except multiple-unit apartment buildings from the resort housing exemption of Section 1(b) (6) of the regulation. Thus on March 14, 1946 the New York State Commissioner of Housing telegraphed the Administrator referring to the housing situation in Long Beach and stating that the municipal authorities had informed him that there was a surplus of housing in the city which was being held for high summer rents made possible by the exemption of resort housing from rent control. He quoted from a letter received from the local officials as follows: " * * * the undersigned members of the Common Council of the City of Long Beach hereby request the intervention of the State of New York through your office with the Office of Price Administration to the end that the resort amendment be modified so as to eliminate from its benefits all units contained in Class A Multiple-Family Dwellings * * * The purpose of this request * * * is a first step towards obtaining the immediate availability of adequate units to accommodate the victims of the Broadway Apartments fire disaster and the many veterans who find themselves without housing." The Commissioner of Housing concluded his telegram with the following statement: "I join in the request of the municipality and urge your cooperation in effecting immediate action in accordance therewith."

On March 15th the Deputy Administrator for Rent of the Office of Price Administration telegraphed the Commissioner of Housing that a representative would be sent to Long Beach "to investigate any cases where landlords were holding units off the market in the expectation of getting a summer exemption when they actually had been renting on a year-round basis and are subject to rent control." On March 18th, the Commissioner of Housing informed the Administrator that the Deputy Administrator's telegram did not answer the request of the officials of Long Beach and that the veterans and others rendered homeless by the fire required immediate help. On March 20th the Deputy Administrator advised the Commissioner of Housing that his proposal "with reference to the raising of the summer exemption on multifamily rental units in Long Beach" was being given favorable consideration. On March 25, 1946, the Administrator issued Amendment 25 [5] which added subparagraph (ii) to Section 1(b) (6) of the regulation. The effect of this amendment was to remove from the summer housing exemption for 1946 all housing accommodations in multiple-unit buildings within the City of Long Beach.

The complainants in this case are owners and operators of multiple-unit apartment buildings devoted to summer rental in Long Beach. As such they enjoyed the benefit of the exemption provided by Section 1(b) (6) of the regulation during the summer seasons of 1944 and 1945 and were adversely affected when on March 25, 1946 by Amendment 25 the Administrator withdrew as to multiple-unit buildings the exemption of resort housing for the summer season of 1946 which he had granted on February 15th. Accordingly on May

[5] "Section 1(b) (6) of the Rent Regulation for Housing in the New York City Defense-Rental Area is amended to read as follows:

"(6) Resort housing—(i) Exemption. Housing accommodations located in a resort community and customarily rented or occupied on a seasonal basis prior to October 1, 1945, which were not rented during any portion of the period beginning on November 1, 1943, and ending on February 29, 1944.

"This exemption shall be effective only from June 1, 1946, to September 30, 1946, inclusive.

"(ii) Exception from exemption. The provisions of section 1(b) (6) (i) shall not apply to housing accommodations in multiple unit buildings within the corporate limit of the City of Long Beach, New York." 11 F.R. 3202.

13, 1946 they filed a joint protest against Amendment 25. Oral hearings were held in the protest proceedings at the request of the complainants. The report and recommendations of the presiding officer together with all the evidence adduced in the proceedings were referred to a board of review which recommended denial of the protest. The Acting Housing Expediter accepted the recommendation of the board of review and on December 18, 1947 denied the protest. The present complaint was then filed in this court. Our jurisdiction under Section 1(b) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 (b), is sustained by the pendency of enforcement suits against the complainants. The complaint seeks a declaration that Amendment 25 was invalid because it was arbitrary, discriminatory and capricious and because it was not generally fair and equitable.

■ We will first consider the complainants' contentions that Amendment 25 was discriminatory. The complainants urge that the amendment was discriminatory in that a few multiple unit buildings were singled out for special restrictive treatment while the vast majority of housing accommodations in the same class in the same industry were free from restrictions. We think that the objection is well taken.

The record indicates that there are approximately 7600 dwelling units in Long Beach of which approximately 3400 are in one-family houses and 1450 in two-family houses. The balance of approximately 2750 dwelling units are contained in buildings accommodating three or more families, which are the multiple unit buildings affected by Amendment 25. There is evidence, however, that only 16 of these multiple unit buildings in the entire city were held for summer rental and were actually affected by Amendment 25. In view of the tremendous increase in population in the summer season it is obvious, therefore, that a great many of the summer seasonal residents were accommodated in the one and two-family houses. The complainants allege that the large number of dwelling units in one and two-family houses thus evidently held for summer rental are in the same class with those units in multiple unit buildings from which the exemption was withdrawn. We think that the record supports this conclusion. During the period of rent control there has never been a distinction made for rent control purposes between the two groups. In both cases most such units contained cooking facilities and a bathroom and in both cases many of the buildings involved had no winter heating facilities. It is evident from the record that the owners of the two groups of summer rental units were economically in direct competition with each other for the business of summer tenants. We conclude that the record does not support the making of a distinction for purposes of rent control or exemption therefrom between dwelling units offered for summer rental contained in one and two unit dwelling houses and those contained in multiple unit houses.

The respondent contends that most of the one-family houses would be expected to be occupied on a year-round basis and therefore already subject to control in view of the 10,000 to 12,000 permanent population. But there is no evidence of this and certainly no indication that most of the units in the two-family houses were so rented. The respondent further asserts that much of the demand for housing which was the basis for Amendment 25 came from former tenants of the Broadway Apartments which was a multifamily apartment house structure, and that in the opinion of "responsible officials of the municipality of Long Beach and of the State of New York that this demand made the inflationary problem most acute with respect to apartments in multifamily structures;" and that one and two-family dwellings contained larger apartments and commanded higher rents than those in multifamily structures. Such limitation of control restricted only to multifamily structures, says the respondent, "was sufficient to meet the emergent situation while affecting a class which includes a relatively small number of landlords," and he states that in the judgment of the Price Administrator the inflationary threat was greatest and the need most urgent for multiple unit apartments.

These arguments seem to us to be beside the point for they do not meet the complainants' charge of discrimination against this "relatively small number of landlords" who, alone, of all the owners of resort housing accommodations in Long Beach, were denied the right to engage in the uncontrolled rental of their properties to summer tenants. It is true that the Administrator had authority in proper cases to decide to control the rents of certain classes of accommodations only. Woods v. Miller Co., 1948, 333 U.S. 138, 68 S.Ct. 421. But in such a situation there must be a reasonable basis for the classification. Here, as the respondent frankly stated in his opinion denying the protest, the "purpose of the exception amendment was to induce landlords of the type of housing needed to rent their accommodations in order to overcome the harsh effects of the catastrophe." Assuming, without deciding, that this was a lawful purpose and not in violation of Section 2(h) or 4(d) of the act, 50 U.S.C.A.Appendix, §§ 902(h), 904(d), it needs no argument to demonstrate that it could have been accomplished as well or better by withdrawing the exemption from all resort housing in Long Beach and that the discrimination against the owners of the comparatively few buildings containing multiple resort housing units was not necessary or even helpful to that end.

Nor is the respondent's position advanced by his argument that the amendment was justified by the increasing need of veterans for housing in Long Beach. For there is no basis for finding that this need was any different in Long Beach than in all other parts of the New York City Defense-Rental Area. It was only in Long Beach, however, that Amendment 25 was made applicable. Summer resort housing in multiple unit buildings in all the many other seashore resort towns and villages of the New York City Defense-Rental Area remained free from rent control. Thus upon this theory there was additional discrimination against the complainants and other landlords in their class in that they alone of all the owners of resort housing in multiple unit buildings in the entire Defense-Rental Area were denied the right to lease their apartments to summer tenants at uncontrolled rentals. It is settled that a regulation is invalid which unnecessarily discriminates between persons similarly situated and puts a greater burden upon some than is put upon others in the same calling and condition. Consolidated Water Power & Paper Co. v. Bowles, Em. App. 1944, 146 F.2d 492, 495; Hawaii Brewing Corporation v. Bowles, Em.App. 1945, 148 F.2d 846, 850; Booth Fisheries Corporation v. Bowles, Em.App. 1946, 153 F.2d 449, 451. We are compelled to conclude that Amendment 25 did just that and that it was, therefore, invalid from its inception.

Moreover we agree with the complainants that the amendment was invalid because it was capricious in the light of its purpose to provide housing for the victims of the Broadway Apartments fire and for veterans needing housing. For those persons obviously needed permanent year-round housing whereas a great many of the dwelling units brought under rent control by the amendment were designed for summer occupancy only and because of the absence of central heating equipment were not in fact suitable for year-round occupancy. This was conceded by a local official of the Office of Price Administration who, by a letter of May 3, 1946, informed counsel for the complainants that if they rented apartments which did not have central heating equipment to victims of the fire the Office would issue certificates permitting eviction of the tenants at the end of the summer season. To attempt to compel the renting to permanent tenants of housing accommodations suitable for summer occupancy only was certainly capricious. The result in many cases was what might have been expected. Apartments were actually rented to summer seasonal tenants at controlled rents so low in comparison with the rents being paid in Long Beach by other summer tenants as to amount to a windfall at their landlord's expense. Indeed it was stated at our bar that all the pending enforcement suits against the complainants had been brought by summer seasonal tenants.

In view of our conclusion that Amend-

ment 25 was invalid from its inception because it was unlawfully discriminatory and capricious it is unnecessary to consider the complainants' other grounds of objection.

A judgment will be entered declaring Amendment 25, issued March 25, 1946, to the Rent Regulation for Housing in the New York City Defense-Rental Area invalid from its date of issuance.