BERNARD LONDON et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim Nos. 28411, 28851.)

Court of Claims, October 27, 1949.

*Bernard L. Bermant, Henry N. Rapaport* and *George Bergen* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman, David Marcus* and *Arthur I. Seld* of counsel), for defendant.

RYAN, J. Pursuant to article IX-A of the Public Housing Law, the State of New York on May 15, 1946, appropriated the use and occupancy of forty-three apartments in the Breakers Hotel at Long Beach for a period of time ending April 30, 1947. The notice of appropriation also included the use of certain services, namely, electric service, garbage disposal and similar services, and the hotel furnishings, but all of these were ruled out by the courts in an action brought by these claimants against the State Commissioner of Housing. (*Weitzner* v. *Stichman,* 271 App. Div. 255, affd. 296 N. Y. 907.)

By Claim No. 28411 claimants seek to recover the rental value of the apartments taken by the State for the period of the appropriation. On this claim our task is to determine the fair rental value of the apartments taken by the State for the term stated

in the notice of appropriation. Claimants demand that they are entitled to recover the rental they would have received in a free and open market. The Attorney-General contends that Office of Price Administration ceiling rates should control.

For eighteen years the Breakers Hotel had been used solely for summer occupancy. On February 21, 1944, the administrator of the Office of Price Administration for the New York City Defense-Rental Area promulgated a regulation, the effect of which was to exempt all resort housing from rent control for the summer season of 1944. Resort housing was defined as housing accommodations located in a resort community and customarily rented or occupied on a seasonal basis prior to October 1, 1945, which were not rented during any portion of the period beginning on November 1, 1943, and ending on February 29, 1944. The exemption was renewed for the summer season of 1945, and again for the summer season of 1946. The Breakers Hotel came within the exemption. However, by amendment 25, issued March 25, 1946 (11 Federal Register 3202), the administrator made a new regulation the effect of which was to remove from summer housing rental all housing accommodations in multiple unit buildings within the city of Long Beach. The owners of the Breakers Hotel protested this regulation and ultimately and under date of September 14, 1948, the United States Emergency Court of Appeals directed the entry of judgment declaring amendment 25 invalid from its date of issuance because it was unlawfully discriminatory and capricious. (*Markbreiter* v. *Woods*, 169 F. 2d 875.) Inasmuch as the attempted control of the Breakers Hotel by the Office of Price Administration has been declared invalid by a court of competent jurisdiction, we disregard any Office of Price Administration ceilings in determining the amount to which claimants are entitled to recover from the State for occupancy for the summer season June 1, 1946, to September 30, 1946. Accordingly, we make an award for this period in the amount of $38,605.

There remains for consideration under Claim No. 28411 the period from May 15, 1946, to and including May 31, 1946, and the further period from October 1, 1946, to and including April 30, 1947. In respect to the two weeks ending May 31, 1946, it appears that by virtue of the litigation hereinabove referred to the State of New York was enjoined, at the instance of these claimants, from occupying the Breakers Hotel until June 28, 1946. Hence we believe claimants are not entitled to an award for the period in question. It was not part of the summer season and if the State had never taken over the apartments claimants

would have had no income from them during that time. They sustained no loss during those two weeks.

We now come to consider an award for the balance of the term of the State's occupancy, running from the end of the summer season to the expiration date named in the notice of appropriation. We have hereinabove adopted four full months, June, July, August and September as the summer season. In so doing we have followed the United States Emergency Court of Appeals. (*Markbreiter* v. *Woods, supra.*) We mention this because claimants' proof of damages for the winter occupancy is based on a summer season ending September 15th, or a three and one-half months' period. Claimants assert that 25% of the monthly rate, arrived at by dividing the summer rental by three and one-half, is a fair and reasonable rental for the winter, Claimants compute this for eight months. They then give a credit of 40% for services, such as heat, garbage disposal and elevator service, which they admittedly did not supply to the State's tenants after October 1, 1946. By this means they arrive at a figure of $13,237.69. By a similar formula, but using one fourth of the summer seasonal rental as the monthly rate, instead of dividing the season rental by three and one-half, and by using seven months as the period of occupancy, instead of eight, we arrive at a result of $10,138.83. However, we have come to the conclusion that for the winter season beginning October 1, 1946, Office of Price Administration ceiling rates must limit our award. This for the reason that these claimants would have been confronted with Office of Price Administration controls had they attempted to lease their apartments that fall despite the fact that the Breakers Hotel had not been used, previously, for winter occupancy, except one time eighteen years earlier. We do not understand that the decree of the Emergency Court of Appeals, dated September 14, 1948, abrogated Office of Price Administration controls entirely. It invalidated the regulation only as it applied to summer rentals. The winter ceiling rates survived. Computing claimants' recovery on this item at the Office of Price Administration rentals promulgated September 9, 1946, we make an award to them for this period in the amount of $8,967.50.

In their second claim against the State of New York, Claim No. 28851, these claimants allege that they were damaged by the failure of the State and its tenants to surrender possession of the appropriated apartments on April 30, 1947, the date of the termination of the period for which the State appropriated them. Specifically they ask for (a) loss of rents from April 30, 1947, to

the respective dates when they were able to place their own summer tenants; (b) legal fees, costs and disbursements incurred in summary proceedings to dispossess the State's tenants; (c) damages to the property beyond ordinary wear and tear and (d) damages sustained by the creation of a cloud on claimants' title. As to this last item there is no proof and it must be dismissed.

As to (a) we award claimants the sum of $8,500 for loss of rents for the summer season of 1947. This sum is computed on open market values. We also award claimants the sum of $1,115 for the month of May, 1947. This sum is computed on Office of Price Administration ceiling rentals, the month of May being considered part of the winter season.

As to (b) the law seems to be settled that " In the absence of any clear contract, a landlord may not recover counsel fees and expenses incurred in procuring the removal of a hold-over tenant by summary proceedings in an action for breach of the tenant's covenant to surrender the premises at the end of the term." (*Printerion Realty Corp.* v. *Mancini*, 61 N. Y. S. 2d 200, 201, citing *Marbridge Bldg. Co.* v. *White*, 115 Misc. 320.) The same rule applies in an action for breach of a tenant's covenant to surrender the premises in good condition. (*Livingston* v. *Robb*, 61 Misc. 81.)

However, we regard this claim as one for damages consequential upon the appropriation which is the subject of Claim No. 28411 and as it appears that claimants instituted the summary proceedings in order to get possession of their apartments as soon as possible and that they put forth an effort to lease them for the balance of the summer season, succeeding therein in a large measure and thus mitigating the amount of damages they sustained, we believe that claimants may properly recover the expense they incurred for counsel fees which, it is undisputed, was the sum of $3,000.

In respect to (c) we award claimants the sum of $1,324, the cost of replacing the water tank on the roof of the Breakers Hotel. At first glance this item might appear to fall within the rule of *Livingston* v. *Robb* (*supra*) but again this is a suit for consequential damages following an appropriation, not an action against a tenant for breach of covenant of a lease. Decision accordingly.