CARLOS S. APARICIO, Plaintiff and Appellant, *v.* JUAN T. PEÑAGARÍCANO, ECONOMIC STABILIZATION ADMINISTRATOR, Defendant and Appellee.

No. 86. Decided January 19, 1962.

*Montilla & Benítez* for appellant. *Víctor M. Marchand, Nieves M. Agostini Torres,* and *Miguel Franquiz Ventura* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On October 1, 1942, the third story of house No. 351 at Salvador Brau Street in San Juan was a dwelling unit of 11 bedrooms, living room, dining room, kitchen, and bathroom, paying a rent of $65 per month. In 1955, this third story was made after the corresponding investment, into four separate dwelling units of different sizes, with their respective kitchens, bathrooms, and an additional stairway. They were leased for the sum of $40, $23, $30, and $90 per month.

The complaint of one of the tenants on the condition of the dwelling he occupied led to an investigation, and on February 19, 1960 the Economic Stabilization Administrator fixed the reasonable rents of $18.60, $10.15, $12.75, and $53.50 respectively. Upon fixing the said rents, he issued an order stating that the landlord had segregated the same space of the original story into four dwelling units, making the corresponding improvements thereon and had invested the sum of $3,578.77 in the repair works of the third story together with those of another story. The Administrator determined that there had been no increase in space nor any repairs which merited the fixing of rents on the basis of the construction cost, for which reason he had to follow the comparable rent system in accordance with the provisions

of the Reasonable Rents Act, and since the rental unit had a freeze rent, he applied the provisions of § 8 of the Rent Regulation in force. Subsequently, on March 14, 1960, the Administrator issued another order stating that the reference to the comparable rents had been inserted by inadvertence, inasmuch as it did not correspond to the norm employed, which fixed the rent on the basis of a proportional part corresponding to each one of said separate dwellings in the freeze rent for the entire space, plus the amount spent by the owner in the segregations made.

On May 26, 1960 the Administrator issued orders of reimbursement as a result of the lower rents fixed by him, such orders covering the whole period from the time the dwellings had been occupied.[1]

When in 1955 the landlord fixed the rents which the tenants were paying, Administrative Order No. 5 promulgated by the Administrator on September 1, 1948 was in effect. This order provided that from the time it went into effect, unless otherwise determined by the Administrator, the maximum rent of any rental unit would be:

A.—For dwellings unit constructed on or before October 1, 1942:

(1) The last rent fixed under the federal rent control program if the dwelling was subject to such control; or

(2) The rent charged on October 1, 1942 if the dwelling had been rented on said date; or

(3) Only in the absence of the above described evidence stated in paragraphs (1) and (2), the first rent charged after October 1, 1942 would govern, if the dwelling was rented after that date; or

---

[1] A reimbursement of $406.60 was ordered to Georgina Córdova, for the overcharge of $21.40 during 19 months; of $269.85 to Guillermo Gallardo, for an overcharge of $12.85 during 21 months; of $1,026.38 to Frank Figueroa, for an overcharge of $17.25 during 59½ months, and of $255.50 to Fanny F. Freche for an overcharge of $36.50 during 7 months. Total—$1,958.33.

(4) If the dwelling had undergone a *change or capital improvement* after the dates mentioned in paragraphs (1) to (3), the first rent charged after said *change or capital improvement* would govern.

As to dwelling units constructed after October 1, 1942, it was provided:

(1) That the maximum rent would be the last rent fixed under the program of federal rent control if the dwelling was subject to such control; or

(2) The first rent charged; or

(3) If the dwelling was subject to a *change or capital improvement* after the dates mentioned in paragraphs (1) and (2), the first rent charged after said *change or improvement*.

The afore-mentioned Administrative Order provided that the maximum rent resulting from what was stipulated above could be altered by the Administrator at the request of either the landlord or the tenant, or on his own initiative, on any of the grounds provided in § 5 of the Rent Regulation for Commercial Premises, except as provided in § 5a(6) thereof.[2] The Administrative Order adopted the definition of "dwelling" prescribed in § 22 of the Reasonable Rents Act, which includes shelter, lodging, room, house, and building, or a part thereof used for shelter or lodging.

Upon fixing the reasonable rents of these dwellings the Administrator acted on the basis of the provisions of § 8 of the Rent Regulation of January 12, 1959—17 R.&R.P.R. § 186–8, which provides:

---

[2] Section 5a(6) referred to an increase in rent on the basis of the commercial importance of the zone where the commercial premise is located, or of the cost of construction of same if it were of recent construction. Among the grounds for increasing the maximum rent, said § 5 considers capital improvements as different from acts of mere preservation or ordinary repairs and the maximum rent does not consider such an improvement, which includes an additional construction, a structural improvement, or a complete remodeling.

"(a) If the unit which was segregated had a fixed maximum rent, the maximum rent for the resulting units shall be fixed in proportion to the area of the original unit, taking into consideration the location of each new unit as compared to that of the original unit.

"(b) When the landlord spends a certain amount in order to effect the segregation, the maximum rent shall be determined on the basis of the maximum rent resulting from subsection (a), plus an amount which shall not exceed 12% per annum of the amount spent by the landlord."

The landlord appealed to the superior court for review of the orders issued. Pursuant to the aforesaid provisions of the regulations the trial court upheld the method used by the Administrator for fixing the reasonable rent, but it set aside the reimbursements ordered retroactively and remanded the case for specific administrative proceedings. Nevertheless, on reconsideration, it sustained the orders as to the reimbursement decreed. The trial court was of the opinion that the Housing Regulation of January 12, 1959 had not been applied retroactively, inasmuch as the fixing of these rents took place thereafter and it considered that the rents fixed were *automatically* adjusted to the rents on October 1, 1942, and therefore, the tenants were entitled to be reimbursed for the overcharges. To review this judgment we granted certiorari.

Insofar as pertinent herein, § 6 of the Reasonable Rents Act—Act No. 464 of April 25, 1946, as amended, 17 L.P.R.A. § 186, 1961 ed.—provides, with utmost simplicity, the manner for fixing reasonable rents:

1. Except as provided in § 6, and unless it is changed by the Administrator pursuant to the powers said section confers upon him, rents higher than those paid on October 1, 1942, which are understood to be the "basic rents," cannot be charged.

2. The Administrator has powers to fix the reasonable rent prescribing increases or reductions in the prevailing

rent in those cases in which, in his judgment, it is so justified by reason of *improvements of capital importance,* etc. No authorized increase shall exceed the fixed rent by more than 15%, except for certain buildings located in the ancient or historical zone of San Juan.

3. If the dwelling or building had not been rented on October 1, 1942, the Administrator shall fix the reasonable rent on the basis of the rents *prevailing* in Puerto Rico *for similar dwellings and buildings* during the year ended October 1, 1942.

4. If the dwelling or building was constructed after October 1, 1942, the Administrator shall fix the reasonable rent on the basis of the *cost* of construction of said dwelling or building; provided that in no case shall the reasonable rent, as computed for one year, exceed 12% of the cost of the works.

5. Where the Administrator adjusts the rent which was being paid prior to the date of the taking effect of § 6 or issues a final order fixing the reasonable rent as determined therein, the tenant is required to pay only the basic or reasonable rent fixed, *but he is not entitled to any reimbursement for the payment made in excess of the reasonable rent prior to the date on which the latter may be fixed,* except in those cases where by express provision of the Act the rent *automatically* conforms to the amount prevailing on October 1, 1942, and except in those other cases where the Administrator issues a temporary order increasing or fixing the maximum rent until the case is finally decided; but the reimbursement would be only from that part of the temporary rent which resulted in excess of the rent finally fixed.

■ The problem presented in this case, not expressly provided for in § 6 of the Act pursuant to the treatment *of fact* given it by the Administrator, leads us to the conclusion that after the dwelling of 1942 was converted into four separate dwellings with the corresponding investment, as the Administrator determined, the first rent fixed by the landlord from the time of said conversion, and while it was not changed

by the Administrator, was a lawful rent under the provisions of Administrative Order No. 5.

Every reasonable rent is in itself, by provision of the law, of a *prospective* nature, for the owner as well as for the tenant. In *Peñagarícano* v. *Superior Ct.; Nadal, Int.*, 81 P.R.R. 849, we rejected, even while unable to correct it, the retroactive application by the Administrator of a reasonable rent higher than the basic one, for the benefit of the landlord. When the reasonable rent is fixed at a lower rate than that which was being paid, for the benefit of the tenant, it also has a prospective effect, except where a provisional rate has been fixed, in which case it is retroactive to the date of the provisional rent with reimbursement of the excess amount of the *provisional* rent over the rent finally determined. If up to the time the Administrator fixes a reasonable rent, changing the basic rent, the rental paid has been higher than the latter, there is a case of *automatic* adjustment, since the law prohibits charging a rent higher than the basic one so long as the latter is not altered by the Administrator. Likewise, if the Administrator determines that none of the conditions specified by the Act for altering the basic rent is present, and thus fixes it as the one which should have been paid, there is also the automatic adjustment which entitles the tenant to reimbursement of any excess over the basic rent. The concept of automatic adjustment, *for the purposes of reimbursement*, refers to the rental paid in excess of the basic rent until such time as the Administrator fixes the reasonable rent. It is not an adjustment, as the trial court understood in this case, of the reasonable rent fixed in relation to the basic rent, for then the situation we rejected in *Nadal* would ensue, and in fact the statutory prohibition of charging an amount in excess of the basic rent before the latter is altered would be annulled.

In the case of Nadal Skerret we held that there was an automatic adjustment, not between the reasonable rent fixed

in excess of the basic one to which we denied retroactive effect, but between the basic rent and the rental charged. Its facts are clearly distinguishable from those of the case at bar. In the former case a rent was being charged in open violation of the basic rent without the dwellings having been subject to change or alteration of any kind. When the tenants requested the landlord for a reduction, by way of counterclaim, the latter requested a change in the basic rent, which he obtained up to a certain amount, although it did not cover the total amount of the rent he was illegally charging. At the time that the Administrator changed that rental, the landlord had been charging a rent in violation of the law, making it a clear case of automatic adjustment which entitled the tenants to reimbursement. Here, on the contrary, there was a change in the situation prevailing on October 1, 1942, to the extent that various separate dwelling units with their own individual features and characteristics were created, which could even be considered as dwelling units not existing in 1942 in the rental market.[3]

Assuming that the administrative order was in conflict with Act No. 464, as the Administrator himself indicates, even then under its peculiar facts this case would not present a situation of automatic adjustment, such situation of fact not being expressly provided by the Act. In the Housing Regulation of 1959 itself, invoked by the Administrator, it is provided in § 186-5(b) that in the case of rental units in buildings constructed prior to October 1, 1942 which had not been rented on that date, the maximum rent shall be the first rent charged after said date, and that the Administrator

---

[3] Compare, by way of illustration, the situation presented in the following cases: *Gregory* v. *Barr*, 203 F.2d 364 (U.S. E.C.A. 1953); *Woods* v. *Macken*, 178 F.2d 510 (C.A. 5, 1949); *Pinkerton* v. *Solis*, 82 A.2d 525 (Pa. Super. 1951); *Banko* v. *Krist*, 104 N.E.2d 641 (Ill. App. 1952); *United States* v. *Marsh*, 142 F.Supp. 686 (D.C. Ind. 1956); *United States* v. *Price*, 108 F.Supp. 497 (D.C. Ken. 1952); *United States* v. *Beatty*, 88 F.Supp. 791 (D.C. Iowa 1949).

may adjust the same on the basis of the rents prevailing in Puerto Rico for similar dwellings and buildings during the year ended October 1, 1942. The tenants could have requested the Administrator, and the latter ordered, a prompt revision of the rents charged for these separate dwellings, and they can not complain if because of their own indifference a reasonable lower rent was not established before.

Unlike Administrative Order No. 5, the new Regulation provided specifically for a situation such as the one in the case at bar. Section 186–6(a) (b). We do not question the right of the Administrator to substitute his own regulation for another which, in his judgment, suited other standards which were more satisfactory to him in the discharge of his duty of administering the law. But where property rights are involved, however, his regulations created a state of law which protects those who act under its provisions, except in the case of a regulation which is void per se. Changes of a substantive nature shall have only a prospective effect. The trial court should have set aside, as it did at first, the orders of reimbursement, since this case, according to its facts, is not one of automatic adjustment of the rent charged with the one prevailing in October 1942.

■ The second problem raised in this appeal brings us to consider the norm followed by the Administrator in fixing the reasonable rent of these dwellings in compliance with § 8–6(a) (b) of the Rent Regulation of January 12, 1959, which repealed Administrative Order No. 5. The appellant maintains that the method used is contrary to the law.

Only the following rents in respect to dwellings exist: (a) the "basic" rent or the rent which was being paid on October 1, 1942; (b) the "basic rent" increased or decreased by the Administrator for the specific reasons stated in the law. One of the grounds for increase is a major capital improvement, but the increase decreed by the Administrator for this and other lawful reasons shall not exceed 15% of

the fixed rent except in the cases of the historic zone; (c) a rent determined by the Administrator on the comparative basis with the rent being paid for a similar dwelling during the year ended October 1, 1942; (d) a rent on the basis of the cost of constructions not exceeding 12% of said cost if the dwelling was constructed after October 1, 1942; (e) a reasonable rent determined by the Administrator higher than the basic rent if the latter did not follow the rents prevailing in 1942 for similar dwellings by reason of family relations or other personal or special relations, and the basic rent was substantially lower; (f) a reasonable rent determined by the Administrator higher than the basic rent, if the dwelling was furnished after 1942, in which case the increase by the Administrator should be according to the number of furnished rooms and the quality of the furniture; (g) although not properly within the concept of reasonable rents, the legislator allowed charging a rent higher than the basic rent if before October 1, 1942 there was an option for the purchase of the property by the tenant and the rent was credited to the selling price.

Every rent charged or authorized as reasonable should comply with the above-mentioned rules and none other. The Administrator may provide by regulation for situations of fact not expressly provided in the law. Nevertheless, every rent he fixes shall comply with the afore-mentioned rules since there does not exist at law, for these purposes, any other type of rent, than those provided in the Act. The law does not provide for a type of rent fixed on the basis of increasing the basic rent up to *12%* of the amount which could have been invested in *separating* a dwelling.

The Administrator concluded that in this case there was no construction of a dwelling after October 1942. The case is remanded to him so that he may determine specifically as a matter of fact, in the light of the evidence submitted and of any other additional evidence that might be necessary,

whether the landlord made major capital improvements to a dwelling rented on October 1, 1942, or whether by the nature of the works performed and by the appearance itself which the dwellings in question acquired, they were not leased at that date. If he concludes the former, the adjustment to the basic rent shall not exceed 15% except in the case of the afore-mentioned exception. If he concludes the latter, he shall apply the basis of comparison to the rent he fixes. In the absence of a temporary order, said rent shall have a prospective effect for the landlord as well as for the tenant.

The judgment appealed from will be reversed and another rendered instead, setting aside the orders of reimbursement and ordering the trial court to remand the case to the Administrator for the proceedings indicated.